In the Interest of Y.V., a minor
child

IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-5713

_____/

Opinion filed April 9, 2015.

An appeal from the Circuit Court for Alachua County.
Hon. James P. Nilon, Judge.

Creighton P. Shafer of Diaz Shafer, P.A., Tampa, for Appellant.

No appearance for Appellee.

RAY, J.

This appeal is from the dismissal of a private petition for dependency filed on behalf of Y.V., a minor child living in Florida after illegally emigrating alone from Honduras to the United States. The trial court dismissed the petition because the events giving rise to the grounds for dependency occurred outside the State of Florida and the court viewed the petition as an attempt to circumvent federal immigration laws. Because the petition comports with Florida's dependency laws and Florida's jurisdiction over this case has not been shown to be preempted, Y.V.

is entitled to an adjudicatory hearing on the merits of the claim. Accordingly, we reverse.

## I. Facts

The petition alleges that Y.V. experienced abuse and abandonment at the hands of his parents in Honduras, which eventually left him with no parent or legal custodian capable of providing supervision and care. He crossed the Mexico-United States border by himself and was picked up by "authorities," who contacted his uncle. Y.V. now resides safely with his uncle, who does not seek any services from the State of Florida to assist with that arrangement. Y.V.'s parents have consented to an adjudication of dependency and waived further notice of the proceedings. The express purpose of the petition is to obtain an adjudication of dependency based on abuse, abandonment, or neglect, as a predicate to requesting special immigrant juvenile ("SIJ") status for Y.V. so that he may seek lawful permanent residence in the United States. See 8 U.S.C. § 1101(a)(27)(J) (2012).

The trial court dismissed the petition because it does not allege that Y.V. has been abused, abandoned, or neglected while in the State of Florida or that he faces the imminent risk of such harms. In a second ground for dismissal, the court concluded that the petition is an attempt to circumvent federal immigration laws and suggested that it lacks jurisdiction over the case for this reason. We address the two grounds in turn.

## II. Origination of the Dependency Grounds

The trial court relied on the intent section of chapter 39 to suggest that the Legislature did not intend for its protections to extend to children living in Florida who are not imminently at risk even though they have been abused, abandoned, or left without a parent or legal custodian capable of caring for them while living elsewhere. Section 39.01 provides a lengthy list of purposes, the first of which is "[t]o provide for the care, safety, and protection of children." § 39.001(1)(a), Fla. Stat. (2013). Section 39.001(3) goes on to set out the chapter's purpose to provide "the children of this state" with certain protections, including "[p]rotection from abuse, abandonment, neglect, and exploitation" and "[a] permanent and stable home." Ultimately, section 39.001(12) provides that the chapter is to be "liberally interpreted and construed in conformity with its declared purposes." We find no provision in chapter 39 requiring that the events giving rise to grounds for an adjudication of dependency occur in the State of Florida. Such a construction, absent express legislative intent, is inconsistent with the State's *parens patriae* interest in the welfare of children within its jurisdiction.

The form and contents of a petition for adjudication of dependency are prescribed in Florida Rule of Juvenile Procedure 8.310. See § 39.501(3)(b), Fla. Stat. (2013) (requiring the form and contents of the petition to be set out by rule). In addition to specific requirements concerning the identities of the child and

parents or legal custodians involved, the presentation of separate counts, and information regarding services that have been provided to the family, the rule requires that the petition "allege sufficient facts showing the child to be dependent based upon applicable law." Fla. R. Juv. P. 8.310(a)(1). The applicable law, section 39.01(15), Florida Statutes (2013), sets out seven independent grounds for adjudicating a child dependent. Two grounds were alleged in the petition to adjudicate Y.V. dependent: section 39.01(15)(a), which requires the child "[t]o have been abandoned, abused, or neglected by the child's parent or parents or legal custodians," and section 39.01(15)(e), which requires the child "[t]o have no parent or legal custodians capable of providing supervision and care." These provisions do not require the child to be at imminent risk. Cf. § 39.01(15)(f) (setting forth a separate ground for dependency when the child is "at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians").

Florida courts have found children to be dependent under these provisions even when the events satisfying the definition of this status did not pose an imminent risk of harm to the child. Specifically, in L.T. v. Department of Children and Families, 48 So. 3d 928 (Fla. 5th DCA 2010), and F.L.M. v. Department of Children and Families, 912 So. 2d 1264 (Fla. 4th DCA 2005), the courts determined that children were dependent because they were orphaned and had no legal custodians, even though responsible adults were voluntarily caring for them.

4

Similarly, in <u>In the Interest of T.J.</u>, 59 So. 3d 1187, 1190 (Fla. 3d DCA 2011), a prima facie case of dependency existed where a child illegally immigrated to this country with her mother, her mother died years later, and the petition alleged that her father had left the family and could not be found after a diligent search. It made no difference that the child's aunt was voluntarily taking care of her. <u>T.J.</u>, 59 So. 3d at 1189-90. Due to the lack of a legally compelled relationship between the children and their caretakers, they were not adequately protected from the harms chapter 39 is designed to prevent and remedy.

Y.V.'s situation is similar to that of the juveniles in <u>T.J.</u>, <u>L.T.</u>, and <u>F.L.M.</u> Although Y.V. has locatable, living parents, the petition alleges grounds for dependency under section 39.01(15)(a) and (e), and the only reason he is not at imminent risk is because a responsible adult is caring for him on a voluntary basis. Therefore, we disagree with the trial court's legal conclusion that the allegations of the petition do not satisfy the requirements of chapter 39.

### III. Intent to Obtain Special Immigrant Juvenile Status

The circuit court's concern that the petitioner is attempting to circumvent federal immigration laws by using the dependency action to obtain SIJ status for Y.V. has two facets. First, the court was concerned about the use of Florida's dependency law as a method of obtaining permanent residency for a person who has crossed the border illegally. Second, the court signaled that it doubted its

jurisdiction over the case, by citing P.G. v. Department of Children and Families, 867 So. 2d 1248 (Fla. 4th DCA 2004), which dealt with a specific exception to Florida's jurisdiction over dependency proceedings involving immigrant children. As explained more fully below, a petitioner's intent to seek SIJ status does not invalidate a dependency petition, and the record establishes no basis for concluding that Florida lacks jurisdiction in this case.

## A. Interplay between Florida Dependency Law and Federal Immigration Law

Although the trial court is not alone in its misgivings about the use of the dependency system as a conduit to achieving a favorable immigration status,[1] this motivation is consistent with the federal and state statutory scheme currently in place, which provides a pathway for undocumented children who have been abused, abandoned, or neglected to obtain lawful permanent residency in the United States. 8 U.S.C. § 1101(a)(27)(J); § 39.5075, Fla. Stat. (2013). While these laws may be vulnerable to misuse, the mere acknowledgement in a dependency petition that the petitioner intends to seek their protections does not render the petition invalid. In fact, as outlined briefly below, both federal and state statutes support the use of a dependency proceeding as a step toward legal residence.

---

[1] See, e.g., T.J., 59 So. 3d at 1194-95 (Wells, J., concurring in part and dissenting in part).

6

Federal law establishes SIJ status as an immigration classification that allows a child to apply to become a permanent resident of the United States. 8 U.S.C. §§ 1101(a)(27)(J), 1255(a), (h)(1). The law defines this status in such a way as to envision findings from both state and federal officials. See 8 U.S.C. §§ 1101(a)(27)(J). As the term "special immigrant" relates to juveniles, federal law defines it as follows:

> an immigrant who is present in the United States--
>
> > (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
> >
> > (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
> >
> > (iii) in whose case the Secretary of Homeland Security consents to the grant of [SIJ] status . . . .

8 U.S.C. § 1101(a)(27)(J). As these statutory requirements reveal, a state court's adjudication of dependency or other custody determination is the first step in the process of a juvenile's obtaining SIJ status. See Ex Parte Burrus, 136 U.S. 586, 593-94 (1890) (recognizing that regulation of parent-child relationships is a matter of state law). The definition then requires additional findings, which may come

7

from any judicial or administrative body, and concludes with the assurance that the ultimate decision on the child's immigration status remains with the federal government through the required consent of the Secretary of Homeland Security.

The Florida Legislature has specifically contemplated Florida's participation in this process by enacting a statute to facilitate the federal law. When a child in Florida is adjudicated dependent, the Department of Children and Families or a community-based care provider must consider whether the child "may be eligible for [SIJ] status," according to the following criteria:

> 1. The child has been found dependent based on allegations of abuse, neglect, or abandonment;
> 2. The child is eligible for long-term foster care;
> 3. It is in the best interest of the child to remain in the United States; and
> 4. The child remains under the jurisdiction of the juvenile court.

§ 39.5075(1)(b), Fla. Stat. (2013). When these criteria are met, the Department of Children and Families or a community-based care provider is required to petition the court for an order finding that the child meets the criteria for SIJ status and, if such an order is obtained, to apply for that status with the appropriate federal authorities on the child's behalf. § 39.5075(4)-(5).

Neither Florida nor federal law directs a state court to reject dependency petitions when they are motivated by a desire to obtain SIJ status. In fact, this desire is supported by the federal and state statutory system when it serves the greater purpose of protecting the child from harm. When this greater purpose is not

8

the true motivation for a petition, federal officials have the discretion to reject the application for SIJ status. Yeboah v. U.S. Dep't of Justice, 345 F.3d 216, 224-25 (3d Cir. 2003) (noting broad discretion of immigration officials to refuse SIJ consent if dependency was part of a "deliberate design on the part of the father to create permanent residence status"); In re Erick M, 820 N.W.2d 639, 646 (Neb. 2012) (observing that the federal government "will not consent to a petition for SIJ status if it was 'sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment'" (citations omitted)). In contrast, the applicable statutes indicate that when a Florida court is presented with a dependency petition, the court's concern should be whether the allegations made in support of an adjudication of dependency satisfy Florida's statutory grounds for such an adjudication, not whether the juvenile hopes to obtain SIJ status. Accord Eddie E. v. Superior Court of Orange Cty., 183 Cal. Rptr. 3d 773 (Cal. Ct. App. 2015) (observing that it is the role of the appropriate officials in the federal government, not of state courts, to determine whether SIJ status is sought for the appropriate purpose). An intent to obtain SIJ status says nothing in and of itself regarding the facial sufficiency of the dependency allegations, F.L.M., 912 So. 2d at 1269, and the ultimate determination of whether SIJ status should be granted is a question for the federal immigration authorities. Therefore, a petition for

9

dependency should not be rejected in Florida based on the mere motivation of the petitioner.

## B. Jurisdiction

Of course, in this case, the court was not concerned merely with the petitioner's motivation, but with its own jurisdiction, which is a proper consideration. In conjunction with defining "special immigrant" as that classification pertains to juveniles, federal law provides that "no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction." 8 U.S.C. § 1101(a)(27)(J)(iii)(I).

L.T. is instructive concerning the application of this exception to state-court jurisdiction over dependency proceedings. In L.T., the Department of Homeland Security rescued a child and released him to his uncle when his boat capsized off the coast of Florida. 48 So. 3d at 929. The subsequent petition for dependency revealed that the uncle filed it in an effort to establish a predicate for SIJ status. Id. at 928. The exception to jurisdiction did not apply because the record did not contain "any of the details of [the child's] release to [his uncle]" or otherwise "reveal the status of any removal proceedings involving [the child]." Id. at 930. The petition in the instant case is similarly silent concerning the details of Y.V.'s

release to his uncle by immigration authorities and the status of any removal proceedings or immigration enforcement custody. Therefore, unless and until information comes to light indicating that Y.V. is in the custody of the Secretary of Health and Human Services, the circuit court has jurisdiction over this case.

## Conclusion

In sum, neither the geographical setting of the events alleged in the petition nor the motivation for the petition precludes Y.V. from being adjudicated dependent under the laws of the State of Florida. The proper question before the circuit court at this stage of the case under review was whether the petition establishes a prima facie case of dependency under the Florida statutes. Because we conclude that it does, we reverse the dismissal and remand for further proceedings.

REVERSED and REMANDED.

WOLF and BENTON, JJ., CONCUR.