# Third District Court of Appeal

## State of Florida

Opinion filed July 15, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2746
Lower Tribunal No. D14-16095
_____

**In the Interest of:**
**K.B.L.V., A minor child**,
Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Cindy S. Lederman, Judge.

Akerman LLP, and George Volsky and Sandra J. Millor, for appellant.

Before SHEPHERD, FERNANDEZ and LOGUE, JJ.

FERNANDEZ, J.

K.B.L.V. appeals the dismissal of his private petition for dependency in which he sought a finding of abandonment as to his father, pursuant to section 39.01(15), Florida Statutes (2013). We affirm because there is no evidence to

support K.B.L.V.'s dependency adjudication as an abandoned child within the meaning of section 39.01(1).

K.B.L.V. was seventeen years old at the time he filed his petition. It is undisputed that K.B.L.V.'s father abandoned him in K.B.L.V.'s native country of Honduras. The father neither established a relationship with him nor provided any financial support. The father never exercised any parental rights or responsibilities over K.B.L.V., and he consented to K.B.L.V.'s dependency petition. K.B.L.V. entered the United States on or about September 2013, and he reunited with his mother in Florida where he currently resides.

K.B.L.V. sought to have himself declared dependent as to his father, pursuant to section 39.01(15)(a) and/or (f), Florida Statutes (2013). This finding would then allow him, as an alien minor, to apply for Special Immigrant Juvenile status ("SIJS"). See 8 U.S.C. § 1101(a)(27)(J)(i).[1] K.B.L.V. in turn could apply for lawful permanent residency (a green card) and secure a path toward citizenship without which K.B.L.V. is subject to deportation to Honduras.

At the adjudicatory hearing on the petition, the trial court found that the father's abandonment was too remote in time and that K.B.L.V was living with his

_____

[1] In addition to a dependency adjudication, the alien minor must also obtain what is commonly referred to as a "best interest order" in which a court finds that "it would not be in the alien's best interest to be returned" to their country of origin. See 8 U.S.C. § 1101(a)(27)(J)(i). Thus, an alien minor is unable to apply for SIJS absent a dependency adjudication and best interest order.

2

mother. The Department of Children and Families added that "due to the remoteness of the abandonment, there is an issue of the lack of harm or the lack of imminent risk of harm, imminent being the key issue." The department took the position that K.B.L.V. "had an appropriate care giver and there was no harm or any risk of harm" to him.

The trial court dismissed the petition. In its Order, the court found that K.B.L.V. had lived with his natural mother since September 13, 2013. The court found and accepted as true the statements in the petition, but considered the father's abandonment to be too remote in time for the court to make a dependency adjudication. The court further found that the alleged abandonment occurred in 2003.[2]

K.B.L.V. moved for rehearing, which the court denied. He argued that there is no remoteness time limitation to abandonment under Florida law. K.B.L.V. further argued that a failure to find him dependent as to his father would place him in substantial risk of deportation which would result in imminent further abandonment and neglect.

K.B.L.V. additionally argues that dependency may be found as to his father, although K.B.L.V. lives with his mother. Furthermore, the court's failure to find K.B.L.V. dependent as to his father will have a real and adverse consequence.

[2] The court thereafter sua sponte entered an amended order in which the court found that the "alleged abandonment occurred at birth."

3

K.B.L.V. will be at a substantial risk of imminent further abandonment and neglect. K.B.L.V. will be unable to apply for and receive SIJS without which he will likely face deportation to Honduras where he will not have any immediate family member who can provide him with food and shelter.

The department takes no position in this appeal. Neither did the department oppose the petition below. The department's position below was based on the legislative requirement, pursuant to section 39.521(b)1, Florida Statutes (2014), to provide protective supervision over the minor's placement upon an adjudication of dependency. K.B.L.V., however, never sought any services from the department and has since attained the age of majority.

We disagree that K.B.L.V. is a dependent child found to have been abandoned, abused, or neglected. A de novo standard governs this Court's review of the trial court's application of the correct law. See C.R. v. Dep't of Children & Family Servs., 53 So. 3d 240, 242 (Fla. 3d DCA 2010); G.C. & D.C. v. Dep't of Children & Family Servs., 791 So. 2d 17, 19 (Fla. 5th DCA 2001). The purpose of chapter 39, Florida Statutes (2013), is:

> To provide for the care, safety, and protection of children in an environment that fosters healthy social, emotional, intellectual, and physical development; to ensure secure and safe custody; to promote the health and well-being of all children under the state's care; and to prevent the occurrence of child abuse, neglect, and abandonment.

4

See 39.001(1)(a), Fla. Stat. (2013). Chapter 39 defines a dependent child as a child who, consistent with the trial court's findings, has "been abandoned, abused, or neglected by the child's parent or parents or legal custodians", or a child who is "at substantial risk of imminent abuse, abandonment or neglect by the parent or parents or legal custodians." § 39.01(15)(a),(f), Fla. Stat. (2013).

K.B.L.V. correctly argues that the alleged abuse or neglect need not occur within a specified time prior to the filing of a petition for dependency. A literal meaning of the statute permits a court to adjudicate a child dependent, provided that the child was abused or neglected at any time, regardless of whether the child is at risk of further abuse or neglect at the time of adjudication.

In the absence of a continuing threat of harm, however, incidents of alleged abuse found too remote in time will generally not support a dependency adjudication. See, e.g., In re K.V., 939 So. 2d 200, 202 (Fla. 2d DCA 2006) (where instances of domestic violence in the presence of the child were too remote in time to support an adjudication of dependency); B.C. v. Dep't of Children & Families, 846 So. 2d 1273, 1274 (Fla. 4th DCA 2003) (stating that "[i]n order to support an adjudication of dependency, the parents' harmful behavior must be a present threat to the child"). Furthermore, as K.B.L.V. also correctly argues, the court need only find dependency as to one parent. See § 39.01(15), Fla. Stat. (2013).

Moreover, the uncontested allegations do not involve a continuing threat of substantial risk of imminent abuse, abandonment, or neglect so to support a dependency adjudication where, as here, the threat is essentially deportation. It is apparent that K.B.L.V. sought a dependency adjudication to secure a certain immigration status or SIJS, rather than to obtain relief from abuse, neglect, or abandonment. This alone is an invalid basis upon which to qualify for a declaration of dependency consistent with the definition of the term dependency pursuant to chapter 39.

In ordinary dependency cases, chapter 39 charges courts with the responsibility to ensure that children under its jurisdiction are cared for in a safe and secure environment. See, e.g., § 39.001(1)(a), Fla. Stat. (2013). K.B.L.V. is in a safe and secure environment in the custody of his mother such that he is not in substantial risk of imminent abuse, abandonment, or neglect.

This is unlike the case, for example, In re Y.V., 160 So. 3d 576 (Fla. 1st DCA 2015). In that case, the petitioner lived with his uncle, his non-legal custodian. Id. at 577. The trial court dismissed the petition because the events that gave rise to the dependency grounds occurred outside the State of Florida, and the court found that the petition was an attempt to circumvent federal immigration laws. Id. at 577-80. The district court reversed and remanded for further proceedings, concluding that the petition established a prima facie case of

6

dependency.  Id. at 581.  K.B.L.V., however, lives with his mother who is his legal custodian.  Additionally, the trial court conducted an adjudicatory hearing prior to the dismissal of K.B.L.V.'s petition.

We therefore affirm the Amended Order Dismissing Private Petition for Dependency because there is no evidence to support K.B.L.V.'s dependency adjudication as an abandoned child within the meaning of section 39.01(1).

Affirmed.

SHEPHERD, J., specially concurring.

Here we have another unopposed petition to have a minor child who has illegally crossed the border of the United States declared dependent on the court for the sole purpose of helping the child obtain legal residency status in the United States. I concur in the decision of the court in this case for the reasons appearing in my concurrence in B.Y.G.M., Case No. 3D14-2409, issued this date. I pause to add that in all probability, these cases do not reach the threshold of a case or controversy for consideration in this court or the court below. Although required for SJIS purposes, our decisions in these cases are nothing but advisory opinions. Anything we decide is subject to review and reconsideration by the United States Department of Homeland Security. See In re: [Identifying Information Redacted By Agency], No. [Identifying Information Redacted By Agency] 2007 WL 5337158 *10 (Dep't of Homeland Sec. AAO July 3, 2007) ("While an order [of a dependency court] is required to establish eligibility under section 101(a)(27)(J) of the [Immigration and Nationality Act], it does not relieve the applicant from the burden of satisfying [the Department of Homeland Security, Citizenship and Immigration Services] that the order was supported by relevant facts, and that it may serve as a basis for special immigrant juvenile status."). I see no

8

jurisprudentially acceptable way for one to file what is nothing more than an unopposed request for assistance in our courts, acquiesce in the allegations of the petition, and thereby secure judicial relief. See Fla. Dep't of Children & Families v. Y.C., 82 So. 2d 1139, 1141 (Fla. 3d DCA 2012).

As in B.Y.G.M., the petitioner here asks us to read a single subsection of the Florida dependency law, 39.01(15), Florida Statutes (2013), in isolation and independent from the remainder of Chapter 39 of the Florida Statutes. Such an interpretation is a "no-no" under the principle that statutes must be read as a whole. See Robinson v. Stewart, 161 So. 3d 589, 595-96 (Fla. 1st DCA 2015) (Makar, J. concurring) (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012) ("Perhaps no interpretative fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.")); see also Stephen Breyer, Active Liberty: Interpreting Our Democratic Constitution 101 (Vintage Books 2006) ("An overly literal reading of a text can too often stand in the way" of 'translat[ing] the popular will into sound policy.'").

Despite the long settled understanding in our federal system that "[p]olicies pertaining to the entry of aliens and their right to remain here are ... entrusted exclusively to Congress," Galvan v. Press, 347 U.S. 522, 531 (1954), the United

9

States Congress, for reasons of its own, has decreed that our stamp of approval is a *sine qua non* for consideration by the United States Citizenship and Immigration Services of a child's request for SJIS status and permanent residency. It is as if we are customs agents, although the federal government will make the final decision. I admit to an erosion of roles between state and federal responsibilities in our federal system in recent times. However, we are not yet colonies or territories of the United States government. We correctly decline to subordinate ourselves to the whim of the United States Congress in this case. The purpose of the dependency laws of this state is to protect and serve children and families in need, not those with a different agenda.[3]

---

[3] Section 39.001 of the Florida Statutes provides a lengthy list of purposes, the first of which is "[t]o provide for the care, safety, and protection of children." Assistance to the United States Citizenship and Immigration Services is not one of them. But see, § 39.5075, Fla. Stat. (2014).