SHEPHERD, J.,
concurring.
I concur in the opinion of the majority in this case. I write only to point out the troubling fact that the Florida Department of Children and Families (DCF) has elected not to participate in these proceedings. DCF has admitted both in the trial court *294 and here that it is a party. DCF trial counsel told the court below: “The Department of Children and Families, as the statute indicates, is an automatic party to all Dependency proceedings.” On appeal to this court, appellate counsel for DCF identified the statute: “The Department’s position was based on the legislative requirement, pursuant to § 39.521(b)l(sic), Fla. Stat. (2014), to provide protective supervision over the minor’s placement upon an adjudication of dependency.”[4] (Emphasis added). Before us now, DCF’s appellate counsel waxes apologetic about its participation below, explaining that it participated there only grudgingly “at the request of the lower court.”
In these cases, the express purpose of the petition is to obtain an adjudication of dependency, based on abuse, abandonment, or neglect, as a predicate to requesting special immigrant status for the purpose of seeking lawful permanent residence in the United States. See 8 U.S.C. § 1101(a)(27)(J) (2013). These private petitions, specifically those that do not seek any state services, are almost always un-eontested. See In the Interest of M.A.S-Q & Y.E.S-Q, 22 Fla. L. Weekly Supp. 213a (11th Cir.Ct. Oct. 22, 2013) (Judge Hanz-man observing with palpable discomfort, “DCF never challenges these cases.”). On those rare occasions where it has taken a position, DCF has opposed the petition. See, e.g. L.T. v. Dep’t of Children & Families, 48 So.3d 928 (Fla. 5th DCA 2010); see also F.L.M. v. Dep’t of Children & Families, 912 So.2d 1264, 1269 (Fla. 4th DCA 2005) (“[Sjuch is not a proper use of Florida’s laws, courts and resources devoted to helping truly-dependent, truly needy children”). DCF may find it uncomfortable to oppose a petition for dependency that will help a child obtain legal immigration status. It may consider these cases to be too sensitive for its taste.[5] However, as the agency charged with protecting children and families, DCF should have a keen interest in the outcome of this case and how we interpret the applicable law.
DCF is the agency responsible for the administration of Chapter 39 of the Florida Statutes. See § 20.19, Fla. Stat. (2013) (“There is created a Department of Children and Families ... [with the] mission of working] in partnership with local communities to protect the vulnerable, promote strong and economically self-sufficient families, and advance personal and family recovery and resiliency.”); Graham v. State, 169 So.3d 123, 2015 WL 1044221, 40 Fla. L. Weekly D633, D636 n. 3 (Fla. 3d DCA 2015) (recognizing the authority granted to DCF under Chapter 39). In this highly complex area of the law, we rely on DCF counsel and expertise. DCF *295 has an obligation to the court to provide its view of the law relevant to these petitions. DCF shirks its duty to this court and its stewardship obligation over scarce state resources when it elects not to participate in significant proceedings to which it is admittedly a party.[6] DCF’s decision not to participate also endangers its own credibility. See Rumph, 667 So.2d at 999 n. 5 (Schwartz, C.J., specially concurring) (remarking “the disparate arguments presented by [DCF], and the unprincipled manner in which it has apparently determined which side it will favor, have caused me to distrust the reliability of any of its legal assertion in these cases”). DCF’s responsibilities under Chapter 39 make them especially well-suited to acquaint the court of the applicable laws and their ramifications.
I do not make this point as a matter of sport. If DCF had fulfilled its duty to the court, we might have learned that as long ago as 1997 the United States Congress registered its disapproval of using state dependency laws for the exact purpose they are being used in this case and sought to correct it.[7] See 8 U.S.C. § 1101(a)(27)(J)(iii); 8 C.F.R. § 204.11(c)(6); Yeboah v. U.S. Dep’t of Justice, 345 F.3d 216, 221-222 (3rd Cir. 2003) (citing H.R.Rep. No. 105-405, at 130 (1997), available at 1997 WL 712946 at *1) (explaining that the purpose of adding subsection (iii) to 8 U.S.C. 1101(a)(27)(J) in 1997 was to “limit the beneficiaries of [Special Immigrant Juvenile Status or SIJS] to those juveniles for whom it was created, namely abandoned, neglected, or abused children”); see also, M.B. v. Quarantillo, 301 F.3d 109, 114 (3rd Cir.2002) (stating the purpose for the revisions was to “curtail the granting of [SIJS]”). We might also have been alerted to other state court authority germane to our decision in this case. See, e.g., H.S.P. v. J.K., 435 N.J.Super. 147, 87 A.3d 255 (2014) (rejecting a petition for dependency findings where “the express objective of the petition was for M.S. to obtain relief for purposes' of his immigration status, rather than for the purpose of obtaining relief from abuse, neglect or abandonment, as his mother had not abused, neglected or abandoned him”); State v. Erick M., 284 Neb. 340, 820 N.W.2d 639, 648 (2012) (“Although a literal reading of the statute would seem to permit a state court to ignore whether reunification with an absent parent is feasible, in practice, courts and USCIS officials normally consider whether the petitioner has shown that an absent parent abused, neglected, or abandoned the juvenile.”).
One cannot blame these illegal immigrant children for exploring any lawful means of remaining in the United States after arriving here. As Amicus itself admits, “obtaining lawful permanent status will almost always be in the child’s best *296 interests.” However, B.Y.G.M. and others like her seek to stretch Chapter 39 and the provisions of the SIJS statute beyond their respective purposes. The purpose of the SIJS law is a narrow one: to provide protection to those children who, with their families, entered the United States illegally and who are in danger of being deported along with abusive or neglectful parents or whose parents- have abandoned them once in the Unite'd States. See Yeboah, 345 F.3d at 221 (explaining the evolution of the SIJ provision). The purpose of Chapter 39 is to protect families and children in need, not to serve those with a different agenda. There are multiple lawful avenues of redress in the immigration laws available to these children, including U visas,[8] T visas,[9] waivers promoting, family unity, humanitarian reasons, or, even more generally, “the public interest.” See Memorandum from Donald Neufeld, Acting Associate Director, Domestic Operations, and Pearl Chang, Acting Chief, Office of Policy & Strategy, to. Field Leadership (March 24, 2009), available at' http://www.usds. gov/sites/default/files/USClAS/Laws/ • Memoranda/ Static — Files—Memoran-da/2009/TVPRA — SIJ.pdf. There is no reason for this court to succumb to those who would misuse our law.
B.Y.G.M. intimates there is no harm in interpreting Chapter 39 literally because she does not seek services from DCF. She is incorrect. DCF is a party — an indispensable party — in each of these cases. A declaration that a child is dependent on the court triggers a host of post-disposition courses of action, including frequent reviews of the child’s condition and status. See supra note 1. As can be gleaned from the course of this case alone, both the trial courts and appellate courts expend considerable resources on these cases. The processing of these cases is not free to either the courts or the taxpayers of this state.
These cases are immigration cases, pure and simple. “The authority to control immigration — to admit or exclude aliens — is vested solely in the Federal Governmtent.” Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915); see also Galvan v. Press, 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954) (“Policies pertaining to the entry of aliens and their right to remain here are ... entrusted exclusively to Congress. . -..”). There has been an increasing blurring of the lines between the federal and state governments and their roles. B.Y.G.M.’s mother has done all she can for her daughter-throughout her life, with the resources she has been able to obtain. Forced to flee El Salvador for her life in 2004,[10] she left her daughter in the care of grandparents. She faithfully called her daughter at least weekly from the time she arrived in the United States, and has provided her and-her caregivers as much supp'ort as she has been able to afford. When it became too dangerous for B.Y.G.M. to remain in El Salvador in 2014, B.Y.G.M. (then sixteen-years old) took it upon her *297 self to cross the border. Two weeks later, the Office of Refugee Resettlement delivered B.Y.G.M. to her mother in Miami-Dade County, where she was welcomed with open arms and has since that time thrived in her home. Her every need is being met.
We correctly decline to declare B.Y.G.M. dependent on the courts of this state for the sole purpose of assisting her to obtain a legal immigration status. We' are not empowered to promote or incent immigration outcomes in conflict with the law and policies of our National Government. See Arizona v. U.S., — U.S.-, 132 S.Ct. 2492, 2498, 183 L.Ed.2d 351 (2012) (noting that this authority resides, in part, on the National Government’s constitutional power to “establish an uniform Rule of Naturalization,” U.S. Const., Art. I, § 8, cl.-4, and its inherent power as sovereign to control and conduct relations with foreign nations). B.Y.G.M.’s recourse in this case is to the United States Congress, however cumbersome that route may be.
I join the opinion of the majority in this case.

. The majority paints an image of the court and DCF closing their files in these cases after the dependency adjudication. That, of course, is not true. It is not the action of B.Y.G.M. that defines the court's and DCF’s obligations and continuing responsibility for the well-being of a child declared dependent on the court under Chapter 39 of the Florida Statutes. It is Florida law. Section 39.521 (l)(b)(3) of the Florida Statutes requires placement of all children adjudicated dependent by a court “under the protective supervision of an authorized agent of the department ... until the court terminates it or until the child reaches the age of 18.” This section of the Florida Statutes details the requirements of that supervision, beginning with judicial reviews at least every six months. See § 39.521(c), Fla. Stat. (2014). However safe a child may appear to be upon an adjudication, the courts and DCF have become sadly aware of what can happen when they turn their backs.

. This would not be the first time DCF has shied away from sensitive matters. See, e.g., R.C. v. Dep’t of Children & Family Servs., 150 So.3d 1277 n. 1 (Fla. 3d DCA 2014); Rumph v. V.D., 667 So.2d 998 n. 5 (Fla. 3d DCA 1996) (Schwartz, C.J., specially concurring).

. The consequence of non-participation is well-illustrated by a casual perusal of In re Y.V., 160 So.3d 576 (Fla. 1st DCA 2015), a case similar to the one before us where DCF also did not appear, In that case, the First District reached the opposite conclusion we reach today. If the reasoning of the First District ultimately prevails, DCF should not be heard to complain in the face of a similar private petition where services are requested.

. Our self-styled "Amicus Curiae” is no less culpable in this regard. The term "amicus curiae” means friend of the court, not friend of a party. Although we are beyond original meaning now, see Ryan v. CFTC, 125 F.3d 1062, 1063 (7th Cir.1997) (citing United States v. Michigan, 940 F.2d 143, 164-65 (6th Cir. 1991)), attorneys who file amicus briefs in this court labor under the same code of conduct as all other counsel who appear here, including the obligation to make the court aware of precedent that may be contrary to their interest. See R. Regulating Fla. Bar 4-3.3.

. A U Visa is available to U.S. crime survivors. See Victims of Criminal Activity: U Non-immigrant Status, U.S. Citizenship & Immigr. Servs.,. http://www.uscias.gov/humanitarian/ victims-human-trafficking-other-crimes/ victims-criminal-activity-u-nonimmigrant-status/ victims-criminal-activity-nonimmi-grant-status (last updated Jan. 09, 2014).

. A T Visa is available for trafficking survivors. See Victims of Human Trafficking: T Nonimmigrant Status, U.S. Citizenship & Im-migr. Servs., http://www.uscias.gov/ humanitarian/victims-human-trafficking-other-crimes/victims-human-trafficking-t-hdmmmigrant-status (last updated Jan. 09, 2014). /'

.She was involved in an abusive relationship with her husband, who it is allegéd has since moved to New York State to work as a farmworker. The father's whereabouts are unknown and he has. nothing . to do -with B.Y.G.M.