# Supreme Court of Florida

_____

No. SC16-179

_____

**IN THE INTEREST OF: B.R.C.M., A MINOR CHILD,**
Petitioner,

vs.

**FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES,**
Respondent.

[April 20, 2017]

LABARGA, C.J.

B.R.C.M., a minor child, seeks review of the decision of the Third District Court of Appeal in In re B.R.C.M., 182 So. 3d 749 (Fla. 3d DCA 2015), on the ground that it expressly and directly conflicts with the decision of another district court of appeal on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

## BACKGROUND

B.R.C.M., an unaccompanied minor from Guatemala, illegally entered the United States at age thirteen and was released by the Office of Refugee

Resettlement to his godmother as a sponsor.[1]  After his arrival, a private petition

was filed on behalf of B.R.C.M. alleging three grounds for adjudication of

dependency under section 39.01(15), Florida Statutes (2014), which defines a

dependent child as a child who is found by the court: "(a) [t]o have been

abandoned, abused, or neglected by the child's parent or parents or legal

custodians"; "(e) [t]o have no parent or legal custodians capable of providing

supervision and care"; or "(f) [t]o be at substantial risk of imminent abuse,

abandonment, or neglect by the parent or parents or legal custodians."  In support

of a determination of dependency, the petition asserted that B.R.C.M.'s father

abandoned him at birth and never provided him with food, shelter, clothing, and

medical care.  The petition asserted that B.R.C.M.'s mother abandoned him at age

four when she disappeared and never contacted him again or provided him with

basic necessities.  B.R.C.M. then went to live with his grandmother until she was

no longer able to care for him because of old age and illness.  At age thirteen,

fearing he would be forced to join a local gang and having no family to care for

---

1. We recognize that B.R.C.M. appears to reside with his godmother, who as a sponsor, is entrusted with his care and custody by the federal government. The sponsor care agreement encourages sponsors who are neither parents nor legal guardians to establish legal guardianship with the local court. We observe that Florida courts have exclusive jurisdiction of all proceedings relating to child welfare. An adjudication of dependency would not preclude B.R.C.M. from continued care by his godmother, but would ensure appropriate placement for the child, consistent with the permanency goals of Chapter 39 of the Florida Statutes.

him, B.R.C.M. fled Guatemala, travelled through Mexico, and entered the United States in Hidalgo, Texas. The petition asserted that B.R.C.M. was placed with his godmother in Miami, Florida, and met his father for the first time after his arrival in the United States. His father has maintained telephone contact with B.R.C.M., but has not provided for the child's basic needs. The petition was denied after an eight-minute hearing in the circuit court, during which the court made no factual findings.

On appeal, the Third District repeatedly observed that the child's sole purpose in filing the dependency petition was to facilitate an application for Special Immigrant Juvenile Status (SIJS) and seek lawful permanent residency. In re B.R.C.M., 182 So. 3d at 751. The district court determined it was "plain on the face of the petition that B.R.C.M. is not 'truly' abandoned, abused or neglected within the meaning of Chapter 39," and despite acknowledging that "[a] godmother is neither a parent nor legal custodian under the statute," affirmed the summary denial of the petition. Id. at 751-52, 754. The court concluded: "The purpose of the dependency laws of this state is to protect and serve children and families in need, not those with a different agenda." Id. at 754 (quoting In re K.B.L.V., 176 So. 3d 297, 301 (Fla. 3d DCA 2015) (Shepherd, J., specially concurring)).

# ANALYSIS

The Third District's conclusion—that B.R.C.M. was not entitled to the protections of Chapter 39 because he is not "truly" abandoned, abused, or neglected and that his petition was filed for the sole purpose of seeking an immigration status—expressly conflicts with the decision of the First District in <u>In re Y.V.</u>, 160 So. 3d 576 (Fla. 1st DCA 2015).

In <u>In re Y.V.</u>, the First District reversed the summary dismissal of a private petition for dependency where the petition set forth the applicable grounds for dependency and alleged sufficient facts, warranting an adjudicatory hearing. The First District stated the express purpose of Chapter 39 as set forth by the Legislature; identified the appropriate form and contents of a dependency petition; and recognized that the applicable law, section 39.01(15), Florida Statutes (2013), provides seven independent grounds for adjudicating a child dependent. <u>Id.</u> at 578. Additionally, the First District declared that "[a]n intent to obtain [SIJS] says nothing in and of itself regarding the facial sufficiency of the dependency allegations . . . [t]herefore, a petition for dependency should not be rejected in Florida based on the mere motivation of the petitioner." <u>Id.</u> at 581.

The purpose of Chapter 39 is "[t]o provide for the care, safety, and protection of children . . . ; to ensure secure and safe custody; to promote the health and well-being of all children under the state's care; and to prevent the occurrence

- 4 -

of child abuse, neglect, and abandonment." § 39.001(1)(a), Fla. Stat. (2014). Consistent with this purpose, section 39.01(15) provides seven independent grounds upon which a child may be adjudicated dependent. "[W]hen a Florida court is presented with a dependency petition, the court's concern should be whether the allegations made in support of an adjudication of dependency satisfy Florida's statutory grounds for such an adjudication, not whether the [juvenile] hopes to obtain [SIJS]." O.I.C.L. v. Dep't of Children & Families, 205 So. 3d 575, 578 (Fla. 2016) (quoting In re Y.V., 160 So. 3d at 581). "[I]f a child qualifies for a declaration of dependency under our statutes, the child's motivation to obtain legal residency . . . is irrelevant." F.L.M. v. Dep't of Children & Families, 912 So. 2d 1264, 1269 (Fla. 4th DCA 2005). Moreover, "[i]f federal law grants a right to alien children to regularize their immigration status by first obtaining a state court adjudication of dependency, then there is no basis for failing to declare a child dependent so long as he or she meets the statutory criteria for dependency." Id.

In his dissent in In re B.R.C.M., Judge Salter identified the trend toward summary denials of dependency petitions by immigrant juveniles based on a belief or conclusion that the juveniles are not entitled to adjudicative findings because they are only seeking immigration relief, not state assistance following abuse, abandonment, or neglect. 182 So. 3d at 764 (Salter, J., dissenting). The dissent observed: "the recent spate of summary denial orders in the trial court and per

curiam affirmances in [the Third District] suggest a categorical rejection of such petitions rather than the usual individualized evidentiary hearings and written findings of fact." Id. (Salter, J., dissenting). We disapprove of the categorical summary denial of dependency petitions filed by immigrant juveniles, and find no authority in the statutory scheme that allows for dismissal or denial without factual findings by the circuit court.

In this case, the dependency petition was filed on behalf of B.R.C.M. by next friends having personal knowledge of the facts alleged, in accordance with Florida dependency law and procedure.[2] The petition asserted three grounds for dependency under section 39.01(15), and alleged sufficient facts, establishing a prima facie case.[3] Nonetheless, the Department of Children and Families did not investigate the allegations in the petition, and it was denied after a brief hearing in which no evidence was presented and no fact-finding resulted. See id. at 755-56 (Salter, J., dissenting).

---

2. "All proceedings seeking an adjudication that a child is dependent shall be initiated by the filing of a petition by an attorney for the department, or any other person who has knowledge of the facts alleged or is informed of them and believes that they are true." § 39.501(1), Fla. Stat. (2014). See Fla. R. Juv. P. 8.201(a)(2).

3. Each dependency petition shall "allege sufficient facts showing the child to be dependent based upon applicable law." Fla. R. Juv. P. 8.310(a)(1).

When a petition for dependency alleges specific facts supporting a finding of dependency under any of the seven statutory grounds, the circuit court must make individualized factual findings and apply the law to the facts in order to make a proper adjudication of dependency. See id. at 766 (Salter, J., dissenting) ("Florida circuit courts should enter findings of fact and conclusions of law that address each juvenile petitioner's individual claims."). "If the petition states a prima facie case, the petitioner should be permitted to introduce evidence in support of his or her claims, and the court should enter specific adjudicative findings responsive to the issues presented by the petition and the evidentiary record." Id. (Salter, J., dissenting). If a child meets the statutory criteria for dependency, the child must be adjudicated accordingly, regardless of the child's motivations for seeking a dependency adjudication. Whether the petition seeks an adjudication to assist the child in applying for an immigration status under federal law is not a basis for summarily dismissing or denying the petition. See id. at 755 (Salter, J., dissenting). The determination of whether an immigrant juvenile may obtain SIJS is reserved for the federal immigration authorities. See In re Y.V., 160 So. 3d at 581.

Because the Third District approved the summary denial of B.R.C.M.'s petition on the basis that his purpose was to seek lawful permanent residency, and

determined that he was not "truly" needy without any factual record or evidence regarding the child's circumstances, we quash the decision below.

## CONCLUSION

We agree with the dissent below that "B.R.C.M.'s 'private petition' for dependency . . . warrants individualized consideration and adjudication rather than summary denial." In re B.R.C.M., 182 So. 3d at 754-55 (Salter, J., dissenting). Accordingly, we quash the decision of the Third District and remand the case for further proceedings consistent with this opinion.

It is so ordered.

PARIENTE, J., concurs.
LAWSON, J., concurs specially with an opinion.
LEWIS, J., concurs in result with an opinion.
CANADY, J., dissents with an opinion, in which QUINCE and POLSTON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LAWSON, J., specially concurring.

I write separately to acknowledge that Justice Canady and those joining his dissent make some valid observations, with which I do not disagree. However, the dissent also appears to agree that there is an express and direct conflict between the Third District's decision in In re B.R.C.M., 182 So. 3d 749 (Fla. 3d DCA 2015), and the First District's decision in In re Y.V., 160 So. 3d 576 (Fla. 1st DCA 2015).

- 8 -

The dissent further disagrees with portions of the Third District's analysis; agrees with portions of the First District's opinion; and appears to agree with the rule announced by this Court on the conflict issue: namely, that private dependency petitions cannot simply be summarily and categorically denied because they appear to be motivated by a desire to gain immigration relief for the child.

Unlike the dissent, I prefer to reach the conflict issue rather than essentially approve the result reached by the Third District on the alternative ground that the petition could have been dismissed based upon pleading deficiencies. The general rule is that a pleading should not be dismissed without leave to amend unless the privilege to amend "has been abused" or amendment would be "futile," i.e., where the pleading deficiencies cannot be cured. Price v. Miller & Solomon Gen. Contractors, Inc., 104 So. 3d 1251, 1252 (Fla. 4th DCA 2013). Because it is clear that the trial judge here would have dismissed this petition irrespective of any attempt to amend, I believe the conflict issue to be ripe for decision. See, e.g., State v. Walker, 923 So. 2d 1262, 1265 (Fla. 1st DCA 2006) (noting that the law does not require futile acts to preserve error for review). I also agree with Justice Lewis that immediate legislative attention and clarification is needed in this area. Otherwise, the courts of this State will continue to expend valuable resources trying to figure out whether and how to apply our dependency statute to facts that do not appear to have even been contemplated when it was enacted.

LEWIS, J., concurring in result.

Although I cannot agree with the summary nature of the proceedings below, I do agree with the multiple district courts in Florida, including the Third District which have essentially held that the structure of statutory dependency in Florida cannot and should not be allowed to be transformed into an immigration processing system which is strictly reserved for our federal immigration authorities. The problems generated by this approach seem to be widely increasing and need legislative attention and clarification immediately.

CANADY, J., dissenting.

Although I do not agree with certain elements of the Third District's reasoning in In re B.R.C.M., 182 So. 3d 749 (Fla. 3d DCA 2015), I nonetheless would approve the result reached in that decision. Under the pertinent provisions of chapter 39, Florida Statutes, B.R.C.M.'s dependency petition was not sufficient to state a prima facie case of dependency. Accordingly, dismissal of the petition was warranted.

I agree with the majority that "[i]f a child meets the statutory criteria for dependency, the child must be adjudicated accordingly, regardless of the child's motivations for seeking a dependency adjudication" and that "[w]hether the petition seeks an adjudication to assist the child in applying for an immigration status under federal law is not a basis for summarily dismissing or denying the

petition." Majority op. at 7. I also agree with the majority that "[i]f the petition states a prima facie case, the petitioner should be permitted to introduce evidence in support of his or her claims, and the court should enter specific adjudicative findings responsive to the issues presented by the petition and the evidentiary record." Id. at 7 (quoting In re B.R.C.M., 182 So. 3d at 766 (Salter, J., dissenting)). But I disagree with the conclusion that the petition filed in this case is sufficient to establish a prima facie case of dependency. Based on the facts alleged and the grounds pleaded in the petition, the Petitioner failed to pass the threshold requirement for an evidentiary hearing.

The Petitioner argues here that a determination of dependency is justified on three separate grounds. One of those grounds, however, was not pleaded in the petition. And the facts alleged in the petition are not sufficient to show a prima facie case under either of the other two grounds on which the Petitioner relies.

The petition is devoid of any claim for a determination that B.R.C.M. is a dependent child on the ground enumerated in section 39.01(15)(e), Florida Statutes (2014)—that is, as a child found "[t]o have no parent or legal custodians capable of providing supervision and care." In the absence of a claim in the petition that dependency exists and should be adjudicated on this specific ground, this basis for determining dependency has never been properly at issue in this case. Requiring an evidentiary hearing regarding this unpleaded claim is totally unjustified.

- 11 -

Nor is an evidentiary hearing justified on the other two grounds asserted by the Petitioner. The facts alleged in the petition do not establish a prima facie case that B.R.C.M. is a dependent child on the grounds enumerated in either section 39.01(15)(a), as a child found "[t]o have been abandoned, abused, or neglected by the child's parent or parents or legal custodians," or section 39.01(15)(f), as a child found "[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians." Understanding the insufficiency of the claims made on these two grounds requires a journey through the definitional maze of section 39.01. The dependency claim here relates to abandonment and neglect—not to abuse. And the insufficiency of that claim turns at least in part on elements of the statutory definitions of abandonment and neglect. The insufficiency is also indicated by the way the basic definitional term at issue here is framed: "[c]hild who is found to be dependent." § 39.01(15), Fla. Stat. (2014). The very term itself suggests a determination based on circumstances that are not temporally remote. Such a determination thus could not be based on the circumstances in Guatemala years ago that are alleged in the petition.

Abandonment is defined in section 39.01(1) as

a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver, while being able, has made no significant contribution to the child's care and maintenance or has failed to establish or maintain a substantial and positive relationship with the child, or both.

- 12 -

The allegations of abandonment in the petition fail to pass muster under this definition for two reasons. Even to the extent that the conduct of the Petitioner's parents in Guatemala might be considered a proper focus, the petition contains no allegations that the parents were able to do anything to remedy their failures regarding the care of B.R.C.M. More to the point, there is no allegation of any deficiency on the part of the caregiver—B.R.C.M.'s godmother—to whom B.R.C.M. has been entrusted by the federal government. Indeed, B.R.C.M. seeks to remain in the custody of the caregiver.

It is not subject to dispute that under federal law B.R.C.M. is in the custody of the government of the United States, which has ultimate responsibility for his well-being. The person to whom B.R.C.M. has been entrusted by the federal government is properly deemed a caregiver within the meaning of section 39.01. The definition of caregiver in section 39.01(10) includes a "person responsible for a child's welfare as defined in subsection (47)." Section 39.01(47) includes within the various categories specified a broad reference to "any other person legally responsible for the child's welfare in a residential setting." B.R.C.M.'s godmother has necessarily undertaken obligations as a condition for the placement of B.R.C.M. with her "in a residential setting" by the federal government that readily bring her within this category.

Regarding the allegations of neglect, as with the allegations of abandonment, there is no claim that the godmother has in any way neglected B.R.C.M. And regarding the allegations concerning the parents, the dependency claim runs aground on the provision contained in section 39.01(44)'s definition of neglect that circumstances depriving a child of proper care "shall not be considered neglect if caused primarily by financial inability unless actual services for relief have been offered to and rejected by such person." The allegations of the petition contain not a hint that the circumstances affecting B.R.C.M.'s family in Guatemala were the result of anything other than "financial inability." Further, as previously mentioned, it is questionable that allegations of such temporally remote circumstances are a proper predicate for an adjudication of current dependency.

The allegations of the petition also fail to support the claim under section 39.01(15)(f) that B.R.C.M. is "at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians." This claim is based on the specter of deportation and the circumstances that B.R.C.M. might face in Guatemala after being deported. As a practical matter, it seems virtually certain that any return of B.R.C.M. to Guatemala would occur only when B.R.C.M. is an adult. In any event, leaving that practical matter aside, the allegations of the petition simply do not show an "imminent" risk of anything. The allegations rest on nothing more than speculation that the federal government might deport

B.R.C.M. Beyond the fact that the requirement that an "imminent" risk be established has not been met, it is a dubious proposition that section 39.01(15) is designed to protect against actions of the federal government under the immigration laws.

The decision of the First District in In re Y.V., 160 So. 3d 576, 579 (Fla. 1st DCA 2015), correctly recognizes that "the federal and state statutory scheme currently in place . . . provides a pathway for undocumented children who have been abused, abandoned, or neglected to obtain lawful permanent residency in the United States" (citing 8 U.S.C. § 1101(a)(27)(J); § 39.5075, Fla. Stat. (2013)). But the dependency claims regarding such children must be evaluated based on the specific requirements of the dependency statute. And not every undocumented child will necessarily meet the requirements for a determination of dependency. Here, those requirements have not been met. Further, it is by no means clear that section 39.5075—which in subsection (4) authorizes Florida courts to issue orders "finding that [a dependent] child meets the criteria for special immigrant juvenile status" under federal law—applies to private petitions seeking such a finding. Section 39.5075(4) refers specifically to petitions submitted by "the department or community-based care provider" as distinct from private petitions.

QUINCE and POLSTON, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Third District - Case No. 3D15-962

(Miami-Dade County)

Ricardo Rodriguez and Mary M. Gundrum of Immigrant Children's Justice Clinic, Florida International University College of Law, Miami, Florida; and Steven Hadjilogiou and Angela Vigil of Baker & McKenzie, Miami, Florida,

for Petitioner

Stephanie C. Zimmerman, Deputy Director & Statewide Director of Appeals, Children's Legal Services, Bradenton, Florida; and Karla Perkins, Appellate Counsel, Children's Legal Services, Miami, Florida,

for Respondent

Bernard P. Perlmutter of Children & Youth Law Clinic, University of Miami School of Law, Coral Gables, Florida; and Whitney M. Untiedt of Akerman LLP, Miami, Florida,

for Amicus Curiae Florida's Children First

Rebecca Sharpless and Romy Lerner of Immigration Clinic, University of Miami School of Law, Coral Gables, Florida; and Robert Latham, Bernard Perlmutter, and Kele Stewart of Children & Youth Law Clinic, University of Miami School of Law, Coral Gables, Florida; and JoNel Newman and Melissa Swain of Health Rights Clinic, University of Miami School of Law, Coral Gables, Florida,

for Amici Curiae University of Miami School of Law Children & Youth Clinic, Health Rights Clinic, and Immigration Clinic