CANADY, J.,
dissenting.
Although I do not agree with certain elements of the Third District’s reasoning in In re B.R.C.M., 182 So.3d 749 (Fla. 3d DCA 2015), I nonetheless would approve the result reached in that decision. Under the pertinent provisions of chapter 39, Florida Statutes, B.R.C.M.’s dependency *1225 petition was not sufficient to state a prima facie case of dependency. Accordingly, dismissal of the petition was warranted.
I agree with the majority that “[i]f a child meets the statutory criteria for dependency, the child must be adjudicated accordingly, regardless of the child’s motivations for seeking a dependency adjudication” and that “[wjhether the petition seeks an adjudication to assist the child in applying for an immigration status under federal law is not a basis for summarily dismissing or denying the petition.” Majority op. at 1223. I also agree with the majority that “[i]f the petition states a prima facie case, the petitioner should be permitted to introduce evidence in support of his or her claims, and the court should enter specific adjudicative findings responsive to the issues presented by the petition and the evidentiary record.” Id. at 1223 (quoting In re B.R.C.M., 182 So.3d at 766 (Salter, J., dissenting)). But I disagree with the conclusion that the petition filed in this case is sufficient to establish a prima facie case of dependency. Based on the facts alleged and the grounds pleaded in the petition, the Petitioner failed to pass the threshold requirement for an eviden-tiary hearing.
The Petitioner argues here that a determination of dependency is justified on three separate grounds. One of those grounds, however, was not pleaded in the petition. And the facts alleged in the petition are not sufficient to show a prima facie case under either of the other two grounds on which the Petitioner relies.
The petition is devoid of any claim for a determination that B.R.C.M. is a dependent child on the ground enumerated in section 39.01(15)(e), Florida Statutes (2014)—that is, as a child found “[t]o have no parent or legal custodians capable of providing supervision and care.” In the absence of a claim in the petition that dependency exists and should be adjudicated on this specific ground, this basis for determining dependency has never been properly at issue in this case. Requiring an evidentiary hearing regarding this un-pleaded claim is totally unjustified.
Nor is an evidentiary hearing justified on the other two grounds asserted by the Petitioner. The facts alleged in the petition do not establish a prima facie case that B.R.C.M. is a dependent child on the grounds enumerated in either section 39.01(15)(a), as a child found “[t]o have been abandoned, abused, or neglected by the child’s parent or parents or legal custodians,” or section 39.01(15)(f), as a child found “[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians.” Understanding the insufficiency of the claims made on these two grounds requires a journey through the definitional maze of section 39.01. The dependency claim here relates to abandonment and neglect—not to abuse. And the insufficiency of that claim turns at least in part on elements of the statutory definitions of abandonment and neglect. The insufficiency is also indicated by the way the basic definitional term at issue here is framed: “[cjhild who is found to be dependent.” § 39.01(15), Fla. Stat. (2014). The very term itself suggests a determination based on circumstances that are not temporally remote. Such a determination thus could not be based on the circumstances in Guatemala years ago that are alleged in the petition.
Abandonment is defined in section 39.01(1) as
a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver, while being able, has made no significant contribution to the child’s care and maintenance or has failed to establish or *1226 maintain a substantial and positive relationship with the child, or both.
The allegations of abandonment in the petition fail to pass muster under this definition for two reasons. Even to the extent that the conduct of the Petitioner’s parents in Guatemala might be considered a proper focus, the petition contains no allegations that the parents were able to do anything to remedy their failures regarding the care of B.R.C.M. More to the point, there is no allegation of any deficiency on the part of the caregiver—B.R.C.M.’s godmother—to whom B.R.C.M. has been entrusted by the federal government. Indeed, B.R.C.M. seeks to remain in the custody of the caregiver.
It is not subject to dispute that under federal law B.R.C.M. is in the custody of the government of the United States, which has ultimate responsibility for his well-being. The person to whom B.R.C.M. has been entrusted by the federal government is properly deemed a caregiver within the meaning of section 39.01. The definition of caregiver in section 39.01(10) includes a “person responsible for a child’s welfare as defined in subsection (47).” Section 39.01(47) includes within the various categories specified a broad reference to “any other person legally responsible for the child’s welfare in a residential setting.” B.R.C.M.’s godmother has necessarily undertaken obligations as a condition for the placement of B.R.C.M. with her “in a residential setting” by the federal government that readily bring her within this category.
Regarding the allegations of neglect, as with the allegations of abandonment, there is no claim that the godmother has in any way neglected B.R.C.M. And regarding the allegations concerning the parents, the dependency claim runs aground on the provision contained in section 39.01(44)’s definition of neglect that circumstances depriving a child of proper care “shall not be considered neglect if caused primarily by financial inability unless actual services for relief have been offered to and rejected by such person.” The allegations of the petition contain not a hint that the circumstances affecting B.R.C.M.’s family in Guatemala were the result of anything other than “financial inability.” Further, as previously mentioned, it is questionable that allegations of such temporally remote circumstances are a proper predicate for an adjudication of current dependency.
The allegations of the petition also fail to support the claim under section 39.01(15)(f) that B.R.C.M. is “at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians.” This claim is based on the specter of deportation and the circumstances that B.R.C.M. might face in Guatemala after being deported. As a practical matter, it seems virtually certain that any return of B.R.C.M. to Guatemala would occur only when B.R.C.M. is an adult. In any event, leaving that practical matter aside, the allegations of the petition simply do not show an “imminent” risk of anything. The allegations rest on nothing more than speculation that the federal government might deport B.R.C.M. Beyond the fact that the requirement that an “imminent” risk be established has not been met, it is a dubious proposition that section 39.01(15) is designed to protect against actions of the federal government under the immigration laws.
The decision of the First District in In re Y.V., 160 So.3d 576, 579 (Fla. 1st DCA 2015), correctly recognizes that “the federal and state statutory scheme currently in place ... provides a pathway for undocumented children who have been abused, abandoned, or neglected to obtain lawful permanent residency in the United States” (citing 8 U.S.C. § 1101 (a) (27)( J); *1227 § 39.5075, Fla. Stat. (2013)). But the dependency claims regarding such children must be evaluated based on the specific requirements of the dependency statute. And not every undocumented child will necessarily meet the requirements for a determination of dependency. Here, those requirements have not been met. Further, it is by no means clear that section 39.5075—which in subsection (4) authorizes Florida courts to issue orders “finding that [a dependent] child meets the criteria for special immigrant juvenile status” under federal law—applies to private petitions seeking such a finding. Section 39.5075(4) refers specifically to petitions submitted by “the department or community-based care provider” as distinct from private petitions.
QUINCE and POLSTON, JJ., concur.