380 So.2d 1028 (1980)
DUVAL UTILITY COMPANY, Petitioner,
v.
The FLORIDA PUBLIC SERVICE COMMISSION, Respondent.
PASCO WATER AUTHORITY, INC., Etc., Petitioner,
v.
The FLORIDA PUBLIC SERVICE COMMISSION, Respondent.
Nos. 55723, 56105.
Supreme Court of Florida.
February 21, 1980.
*1029 Kenneth M. Myers and R.M.C. Rose, of Myers, Kaplan, Levinson, Kenin & Richards, Miami, for Duval Utility Co. and Pasco Water Authority, Inc., petitioners.
Leon F. Olmstead, Staff Counsel and Prentice P. Pruitt, Legal Director, Tallahassee, for Florida Public Service Commission; and Jack Shreve, Public Counsel and William S. Bilenky, Associate Public Counsel, Tallahassee, for the Citizens of the State of Florida, respondents.
Gary P. Sams, of Hopping, Boyd, Green & Sams, Tallahassee, for General Development Utilities, Inc. and Florida Waterworks Ass'n, amicus curiae.
Gerald A. Figurski, County Atty., and Scott L. Knox, Chief Asst. County Atty., Port Richey, for Pasco County, amicus curiae.
ENGLAND, Chief Justice.
These consolidated cases bring to us two orders of the Public Service Commission which condition the right of two utilities to receive service availability charges (commonly known as "connection charges," or contributions in aid of construction) from their customers. Under the commission's orders, the utilities must agree to hold all such charges from company customers solely for the use and benefit of those customers, not only during the course of future rate proceedings but also upon the sale or other disposition of the utilities' properties. The main purpose of the commission's condition for service availability charges is to assure that customers do not have to pay for the system twice upon its sale or condemnation, once through their contributions and a second time through their rates to support the transferee's investment when a sale or condemnation includes contributions. A more complete factual account of the history of this case is helpful to its determination.
The utilities applied to the commission for approval of service availability charges pursuant to section 367.101, Florida Statutes (1977). Appropriate proceedings were conducted by the commission for a determination of the propriety of the proposed charges, after which the commission entered orders approving the requested amount of charges. In those orders, the commission for the first time articulated what it described as "a new approach to the question of customer contributions." The relevant text of one of the orders explains this new approach and its rationale:
We recognize that the customers (be it the developer who builds the service facility or the owner thereof), by payment to *1030 the utility of the service availability charges (CIAC) are "purchasing" water and sewer utility service availability. However, CIAC is a contribution to the utility's capital and is so recognized by both State and Federal law. (See 1976 Tax Reform Act, 90 Stat. 1912). So long as the initial utility that receives the CIAC provides the service, the customer receives the benefit of his contributions in the form of lower rates because CIAC is deducted from the company rate base. However, when the utility is sold, whether by condemnation or negotiation, if the seller makes no allowance or price reduction (and they usually do not) for the service facilities financed through customer CIAC, as a result, the CIAC may become investment in the hands of the buyer, which investment must be supported by the rates paid by the customers. This is grossly discriminatory. Systems owned by governmental agencies may be financed either through bonds or by assessments against prospective users, or a combination of both. Thus, the customers who have financed a system in whole or part through CIAC may have to pay for it again through rates or taxes to support bonds sold to buy the system. The same would apply to a sale to another investment-owned company.
We believe that, in accordance with the weight of authority, the profit on the sale of utility assets must, to a degree, inure to the benefit of the customers, and we propose to provide therefor.
To the extent that the customers have borne the burden of providing capital or facilities used to provide the utility service, they should share with the utility owners in the benefits which may result from the sale of those facilities. Therefore, we will require as a condition precedent to the implementation of the proposed service availability policy and increased charges, an agreement by the utility, which will be incorporated in its service availability policy and all developer agreements. The agreement and tariff provisions will provide that all monies and property received by the company as contributions, or without investment by the utility company, will be held, or received by the utility solely for the use and benefit of its customers. Such contributions will have no value in any future proceedings wherein establishment of rates for service is considered, or sale or transfer of the utility system, whether by a negotiated sale or by condemnation under the statutes relating to eminent domain. The agreement will also provide that, in establishing value of a utility system, any consideration relative to the ability of a water and/or sewer utility system to support or provide a return on investment through its revenue, will be on the basis of the ratio between company investment in gross plant in service and contributions-in-aid-of-construction. The revenue representing the portion of company investment in plant in service will be the sole criterion for the evaluation.
Three issues are presented for our consideration, the first of which is dispositive.[1] That issue is whether, as petitioners allege, there was an absence of competent and substantial evidence to support the commission's findings.[2] We agree with petitioners that the evidence was legally deficient.
The commission supports its conclusion regarding conditional service availability charges (i) by the testimony of a county commissioner in one proceeding to the effect that a municipal or county condemning *1031 authority would be required to pay for contributions in aid of construction, and (ii) by an accountant for the company in the other proceeding to the effect that customers would never receive any proceeds from a sale or condemnation of the water utility. While these statements are obviously relevant to the ultimate policy decision  whether customers should receive the benefit of service availability charges on the sale or disposition of utility property  they do not constitute competent substantial evidence for the commission's determination.
Competent substantial evidence is "such evidence as will establish a substantial basis of fact from which the fact at issue can reasonably be inferred [or] ... such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." De Groot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957). The conclusory statements relied on by the commission do not provide sufficient support for the findings necessary to underpin the commission's action, among which are: (1) that on sale or condemnation, the cost of all property designated as contributions in aid of construction must be supported by the rates paid by customers, and (2) that on sale or condemnation of utility property no allowance or price reduction is made for contributions in aid of construction.
Because the orders lack competent substantial evidence to support the commission's incipient policy determination,[3] we quash that portion of the order conditioning service availability charges and remand these cases for further proceedings below. Section 120.68(10), Fla. Stat. (1977).
It is so ordered.
ADKINS, OVERTON, SUNDBERG and ALDERMAN, JJ., concur.
BOYD, J., dissents.
NOTES
[1] Petitioners allege that their right to procedural due process was violated by the lack of adequate notice that a new condition would be imposed, § 120.57(1)(b)2, Fla. Stat. (1977), and by the denial of an opportunity to address the issue in an adjudicative proceeding, § 120.57(1)(b)4, Fla. Stat. (1977). They also allege that the commission lacks legal authority to condition the approval of service availability charges, either under section 367.101, Florida Statutes (1977), or under any other statute by which the commission is assigned responsibility over water and sewer companies. In light of our decision on the first issue, we find it unnecessary to reach either of these issues.
[2] §§ 120.68(10), 120.57(1)(b)7, Fla. Stat. (1977).
[3] McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).