791 So.2d 17 (2001)
G.C., and D.C., As Parents of A.C., and H.C., Children, Appellants,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D99-2227.
District Court of Appeal of Florida, Fifth District.
March 30, 2001.
Rehearing Denied June 28, 2001.
*18 James M. Russ, Orlando, for Appellants.
James A. Sawyer, Jr., Senior Attorney, Department of Children and Families, Orlando, for Appellee.
PLEUS, J.
This case involves the balancing of rights of the state to protect children with the rights of the family in the context of alleged sexual abuse perpetrated by a parent on his child.
The parents appeal an order declaring dependent their two daughters, H.C. and A.C. H.C. was born in September of 1985 and her younger sister, A.C., was born in October of 1986. The trial court found the Department of Children and Families (DCF) sufficiently established that H.C. was the victim of sexual abuse by the father. The court further found the mother mentally abused H.C. As to A.C., the court found abuse by the father in that A.C. was present when H.C. was abused. The court found neither abuse nor prospective abuse as to the mother with respect to A.C.
The mother challenges the sufficiency of the evidence upon which the trial court found that she mentally abused H.C. Both parents claim error by the trial court in excluding them from the dependency disposition hearing when H.C. testified. They further claim a denial of due process by the court's failure to postpone the hearings until potential criminal charges against them for the alleged conduct associated with the dependency were finally *19 disposed of so they could testify without fear of criminal prosecution.
Pursuant to section 39.413, Florida Statutes (1997), we have jurisdiction. As to the issue of sufficiency of evidence, the standard of review is whether the trial court's findings are supported by competent, substantial evidence. See In re D.J.W., 764 So.2d 825 (Fla. 2d DCA 2000). Competent, substantial evidence has been defined as "`such evidence as will establish a substantial basis of fact from which the fact at issue can reasonably be inferred...'." Duval Utility Co. v. Florida Public Service Commission, 380 So.2d 1028, 1031 (Fla.1980). Webster's defines "substantial" in terms of "solid" and "considerable." WEBSTER'S NEW AMERICAN DICTIONARY 997 (Deluxe ed.1966). The other two issues of exclusion and postponement involve questions of law, and thus, the standard of review is de novo.
In February of 1998, H.C., then a sixth grader, told her teacher she was afraid to go home because her father had hit her. She continued crying and refused to get on the bus. When questioned in the principal's office, she stated that her father had also been sexually abusive to her. A deputy sheriff and a representative of DCF arrived at the school and a taped interview took place between H.C. and a deputy from the Osceola County Sheriff's Department. The following day, another taped interview took place between H.C. and DCF case coordinator, Laura Phelps. Ms. Phelps also interviewed A.C. On the tapes, H.C. recounted numerous incidents, going back to 1996, in which her father had touched her with his hand over her clothing in her vaginal area. She also claimed her father had slapped her hard, causing her to faint, while the family was building a fence. In the interview of the younger sister, A.C., by Ms. Phelps, A.C. insisted that H.C. was lying about the fence incident. During the questioning by Ms. Phelps, however, A.C. asserted that she had seen her father touch H.C. through her clothing on her vagina on more than one occasion. Later at trial, A.C., contrary to her previous statement, testified that she had not seen her father touch H.C. between the legs in the crotch area. It is undisputed that no physical evidence of sexual abuse exists in this case.
Shortly after the initial petition was filed by DCF to have the children taken into custody, H.C. "recanted" her earlier statements of being sexually molested. In a sworn statement, video-recorded in her home in an interview conducted by Lori Lakeman, and arranged by the father's attorney, James Russ, H.C. described the incidents in terms of her father tickling her below the belly button.
Before H.C. was interviewed in the State Attorney's office, the mother, on the advice of Mr. Russ, had H.C. review the tapes. Later at trial, H.C. testified that what she said on this tape was different from what she told the police and her testimony at trial because, "My mom wants my dad back." She then testified that "the tape wasn't right," and that her mother told her to "say what's on the tape. And that was not right."
Prior to trial, a second taped interview took place between H.C. and Ms. Phelps. As in her trial testimony, and her other interviews, except for the one conducted in her home by private investigator Lori Lakeman, H.C. stated her father had touched her over her clothing in her vaginal area numerous times. The trial court noted, in its order of dependency, that H.C.'s account of the scope and frequency of the abuse was often confusing and conflicting. The court, nonetheless, found H.C.'s testimony credible that she was touched by her father on three different occasions where she goes to the bathroom. *20 The court further noted that H.C. had testified "that ... [A.C.] was present when these events occurred and that on at least one occasion, ... [A.C.] saw the father touching ... [H.C.]."
The trial court's findings that the father sexually abused H.C. and that some of the abuse occurred in the presence of A.C. will not be disturbed by this court because they are supported in the record by competent, substantial evidence. See D.J.W.

MOTHER'S MENTAL ABUSE OF H.C.
The court did not find that H.C. complained to her mother about the father's abuse or that the mother failed to protect H.C. from sexual abuse. However, the court did find that the mother's conduct after the alleged abuse justified a finding that the mother mentally abused H.C. Section 39.01(2), Florida Statutes (1997), defines abuse, in pertinent part, as:
... any willful act that results in any physical, mental, or sexual injury that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired....
The key issue in cases of alleged mental abuse is willfulness. After a careful review of the entire record, we hold that the trial court's finding that the mother mentally abused H.C. is not supported by competent, substantial evidence. The evidence simply was legally deficient.
In its Order of Adjudication of Dependence with Findings of Fact, the court noted that after H.C.'s initial complaint, the father left home on the instruction of DCF. During this period, the trial court concluded the mother exercised extremely "poor judgment" in dealing with H.C. The mother exposed the children to the father on at least two family outings. On another occasion, the father spent the weekend with the mother and the children stayed with their paternal aunt. When questioned about the father's possible fate, the mother told the children that he "could go to jail" and that this was because of what H.C. had said.
The trial court concluded that the mother's "poor judgment" continued when she "invited" Lori Lakeman into her home to interview and video-tape the children, and then replayed this video to H.C. on at least three occasions before her interview with the State Attorney. From that, the court stated: "This was clearly an effort to reinforce... [H.C.'s] retraction of her accusation against the father." There is no evidence in the record to support a finding that the purpose of reviewing the tapes was an attempt by the mother to get H.C. to recant truthful testimony of abuse which would enable the father to return to the home.
It is important to note that H.C.'s testimony was not, "The tape wasn't right. Mother knew it wasn't right, but she told me to say it anyway." Had that been H.C.'s testimony, we would have had competent, substantial evidence.
The trial court went on to state:
The Mother's conduct, taken as a whole, was an effort to secure the Father's return to the home at any cost, even the safety and emotional welfare of the Children. It further indicates either the Mother's unwillingness to protect ... [H.C.], or ignorance of ... [H.C.'s] mental and emotional welfare. Such behavior was likely to cause ... [H.C.'s] health to be significantly impaired, and amounted to mental abuse. For these reasons, the Court concludes that DCFS has shown, by a preponderance of the evidence, that ... [H.C.] was abused by the Mother.
The parents contend that the mother, by advising the children that what H.C. alleged as true could put their father in jail, *21 was simply telling them the truth and that a parent does not abuse a child by telling him or her the truth. We agree. The mother's motives are not at all clear from the record. The record does not support the conclusion that her statement to the children was a willful act that resulted in a mental injury likely to significantly impair H.C.'s mental or emotional health. The mother may well have believed H.C.'s accusation was not truthful or at least was a misinterpretation of the father's actions.
To conclude that Lori Lakeman was "invited" into the home to interview H.C. misconstrues the undisputed evidence. Lakeman's interview was arranged by the parents' attorney. The action was entirely appropriate under the circumstances. The mother simply was following competent legal advice.
We recognize it is not the role of an appellate court, in a case such as this, to substitute its judgment for that of the trial court. Rather, it is our responsibility to search the record for "competent, substantial evidence" which supports the trial court's findings and conclusions. Nowhere is this responsibility greater than in a dependency case, where the testimony is so often confusing and conflicting.
Poor judgment on the part of a parent, or telling a child the truth about the consequences of her actions, or following the advice of counsel, even if taken as a whole, is not sufficient to establish mental abuse, as defined by Florida law. We conclude that the evidence presented at the hearing was legally insufficient to support the finding that the mother mentally abused H.C.

EXCLUSION OF THE PARENTS FROM THE HEARING AT WHICH H.C. TESTIFIED
Section 39.408(c)(2), Florida Statutes (1997) and Florida Rule of Juvenile Procedure 8.255.(c) provide authority for the examination of children outside the presence of their parents. The statute has since been re-codified into section 39.507(2), Florida Statutes (2000). In compliance with Rule 8.255.(d)(2)(C)(iv), the court found there was a substantial likelihood of mental or emotional harm if H.C. were required to testify in the presence of her parents and that it was in her best interest to testify outside their presence. The court further found it more likely the child's testimony would be truthful if made outside the presence of the parents. The only persons present were the child's grandmother and the attorneys for the respective parties.
Suffice it to say, we find enough evidence in the record to support the court's decision and the trial court's finding of a substantial likelihood of mental or emotion harm. Perhaps it might have been preferable to have a live video feed or recorded videotape of her testimony, but this was not requested by the parents. Granting such a request, of course, would have been a discretionary call by the trial court.
The parents note that in Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court noted that the right to a face-to-face confrontation with one's accuser should be abridged only where the denial is necessary to further an important public policy and the testimony's reliability is otherwise assured. Here, the trial court found the testimony would be more truthful; additionally, there is no dispute that the protection of children is an important public policy, particularly for the judicial branch of our government. Given the nature of the alleged offense, the child's chronological and emotional age, and the relationship of the parties, we hold that the parents' *22 constitutional right of confrontation through cross-examination was not unduly impaired by the fact that H.C. was allowed to testify outside of their physical presence.

FAILURE TO POSTPONE THE HEARING
The parents faced the dilemma of having the absolute legal right to appear as witnesses in the dependency proceedings but also the absolute right to remain silent in the criminal proceedings which were then pending against them.[1] They claim that a refusal to delay the proceedings amounts to a denial of due process. However, the parents concede that the decision to grant or deny a continuance lies within the sound discretion of the trial court. In this case, we do not believe the court abused that discretion.
We reverse the findings of dependency of H.C. as to the mother, and remand to the trial court to order the child placed with her mother subject to such reasonable conditions as the court feels are appropriate.
AFFIRMED IN PART; REVERSED IN PART, and REMANDED.
SHARP, W., J., concurs.
PALMER, J., concurs in part and dissents in part, with opinion.
PALMER, J., concurring in part, dissenting in part.
I concur with the majority as to all issues except one. With respect to the reversal of the trial court's finding of dependency of H.C. as to the mother, I respectfully dissent. The trial court's finding of dependency was not an abuse of discretion.
Although certain facts cited by the trial court to support its adjudication of dependency may not, standing alone, justify a finding of dependency, all of the facts properly viewed together, constitute sufficient evidence to support the trial court's finding of dependency. For example, allowing H.C. to be interviewed in the family's home by an investigator hired by mother's counsel might not, by itself, be either improper or support a finding of dependency. However, when coupled with other facts, such as the showing of the tape to H.C. on multiple occasions before her interview with the State Attorney, the cumulative evidence supports the trial court's finding that the mother's conduct, taken as a whole, evidenced an effort on her part to secure the father's return to the family's home at any cost, even at the risk of compromising the safety and emotional welfare of H.C. Similarly, the evidence relating to the mother's comment to the children that the father could go to jail because of what H.C. had said may, by itself, be insufficient to support a finding of dependency. However, when considered in combination with the other evidence presented, it supports the trial court's determination that the comment was part of a calculated effort on the part of the mother to influence H.C. to recant truthful testimony. Certainly, a parent's attempt to persuade a child to recant truthful testimony of abuse so as to enable the abuser to be permitted back into the family home constitutes abuse. In my view, the trial court's finding that the mother was unwilling to protect H.C. was sufficient to support the determination that the mother's behavior was likely to cause H.C.'s mental and emotional health to be impaired sufficiently so as to constitute mental abuse.
NOTES
[1] The mother was tried for tampering with a witness and the jury acquitted her. Charges of sexual abuse against the father were nolle prossed.