# Supreme Court of Florida

_____

No. SC15-1570
_____

**O.I.C.L.**,
Petitioner,

vs.

**FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES**,
Respondent.

[September 22, 2016]

POLSTON, J.

O.I.C.L. seeks review of the decision of the Fourth District Court of Appeal in O.I.C.L v. Department of Children & Families, 169 So. 3d 1244 (Fla. 4th DCA 2015), on the ground that it expressly and directly conflicts with the decision of the First District Court of Appeal in In re Y.V., 160 So. 3d 576 (Fla. 1st DCA 2015), and the decision of the Third District Court of Appeal in In re T.J., 59 So. 3d 1187 (Fla. 3d DCA 2011), regarding the definition of a dependent child under section 39.01(15)(e), Florida Statutes.[1]  However, because the individual in the case under

---

1.  We have jurisdiction.  See art. V, § 3(b)(3), Fla. Const.

review is now an adult who cannot be adjudicated a dependent child under Florida law, we dismiss this case as moot.

## I. BACKGROUND

A private petition for an adjudication of dependency under sections 39.01(15)(a) and (e), Florida Statutes, was filed in the trial court on behalf of O.I.C.L. approximately two and a half months before O.I.C.L.'s 18th birthday. O.I.C.L., 169 So. 3d at 1246. The petition alleged that O.I.C.L.'s father abandoned him during his mother's pregnancy, that his mother neglected him since the age of twelve by failing to provide him with sufficient food and clothing in Guatemala, and that his mother forced him to leave her home in Guatemala when he turned seventeen. See id. The petition further stated that O.I.C.L. was detained by the federal Office of Refugee Resettlement (ORR) after illegally entering the United States and that ORR later released him to his uncle in Palm Beach County.

After an evidentiary hearing, the trial court denied the petition for child dependency. The trial court ruled that O.I.C.L. did "not qualify as dependent under section 39.01 because he left his Mother in Guatemala and he now resides with and is cared for by his Uncle, against whom there are no allegations of abandonment, abuse, or neglect."

On appeal, the Fourth District affirmed. Id. The Fourth District ruled that the uncle qualified as a "caregiver" under section 39.01(10), Florida Statutes,

- 2 -

because ORR (a government agency that is considered a caregiver) released O.I.C.L. to his uncle, thereby entrusting him to his uncle's care. Id. at 1247. The Fourth District explained that, "[a]s there were no allegations of abandonment, abuse, or neglect against the uncle, a presumption arose that he was indeed 'capable of providing [both] supervision and care' to [O.I.C.L]." Id. at 1248.

Judge Forst dissented in the Fourth District. Although he generally agreed with the majority's analysis and conclusion, Judge Forst believed that the trial court failed to adequately address whether O.I.C.L. presented a prima facie case of child dependency under section 39.01(15)(e). Id. at 1251 (Forst, J., dissenting).

## II. ANALYSIS

O.I.C.L. argues that the Fourth District failed to acknowledge section 39.01(15)(e) as a separate basis for a finding of child dependency. However, we dismiss this case because the issue of whether O.I.C.L. is a dependent child pursuant to section 39.01(15)(e) is moot.

While the petition for child dependency was filed approximately two months before O.I.C.L.'s 18th birthday, O.I.C.L. reached majority age in 2015. Now that O.I.C.L. is over 18 years old the question of whether O.I.C.L. should be deemed a dependent child pursuant to Florida law is no longer an issue. See Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992) ("A case is 'moot' when it presents no actual controversy or when the issues have ceased to exist."); Lund v. Dep't of

Health, 708 So. 2d 645, 646 (Fla. 1st DCA 1998) ("The general rule in Florida is that a case on appeal becomes moot when a change in circumstances occurs before an appellate court's decision, thereby making it impossible for the court to provide effectual relief.").

Chapter 39, Florida Statutes, entitled "Proceedings Relating to Children," provides no authority for a Florida court to adjudicate an adult living in Florida to be a dependent child of the State. Section 39.001(1)(a), Florida Statutes, explains that the purpose of chapter 39 is "[t]o provide for the care, safety, and protection of children" and "to promote the health and well-being of all children under the state's care." Section 39.01(12), Florida Statutes, further provides that " '[c]hild' or 'youth' means any unmarried person under the age of 18 years who has not been emancipated by order of the court." Moreover, section 39.01(15) clearly specifies that a " '[c]hild who is found to be dependent' means a child." Therefore, an individual over the age of 18 fails to satisfy Florida's statutory definition of a "child" who can be adjudicated a dependent child under any of the grounds listed in section 39.01(15).

"[W]hen a Florida court is presented with a dependency petition, the court's concern should be whether the allegations made in support of an adjudication of dependency satisfy Florida's statutory grounds for such an adjudication, not whether the [individual] hopes to obtain [Special Immigrant Juvenile (SIJ)] status."

- 4 -

In re Y.V., 160 So. 3d at 581.  While "a state court's adjudication of dependency or other custody determination is the first step in the process of [] obtaining SIJ status," federal immigration law "then requires additional findings, which may come from any judicial or administrative body."  Id. at 580 (summarizing 8 U.S.C. § 1101(a)(27)(J)).  Federal law is clear, however, that "the ultimate decision on the child's immigration status remains with the federal government through the required consent of the Secretary of Homeland Security."  Id. (relying on 8 U.S.C. § 1101(a)(27)(J)(iii)); see also Eddie E. v. Super. Ct. of Orange Cty., 183 Cal. Rptr. 3d 773, 778 (Cal. Ct. App. 2015) (noting that it is the role of the federal government, not state courts, to determine whether SIJ status is appropriate).  Recognizing that the federal government determines immigration status, section 39.5075(6), Florida Statutes (emphasis added), provides that a Florida court may retain jurisdiction over a dependency case until the age of 22 "solely for the purpose of allowing the continued consideration of the [SIJ status] petition and application by federal authorities," and only "[i]f a petition and application have been filed and the petition and application have not been granted by the time the child reaches 18."

Accordingly, the fact that obtaining a state court order of child dependency is a first step in potentially securing SIJ status from the federal government at a later date does not change our mootness analysis by transforming the immigration

context into a collateral legal consequence.  Florida courts simply cannot declare an individual over 18 years of age to be a dependent child under current Florida law.

Citing <u>Roe v. Wade</u>, 410 U.S. 113, 125 (1973) (quoting <u>S. Pac. Terminal Co. v. ICC</u>, 219 U.S. 498, 515 (1911)), the dissent claims that mootness should not prevent this Court's review because these types of petitions are "capable of repetition, yet evading review."  However, petitions for adjudications of dependency can be and are filed on behalf of children, including undocumented children, before the children are about to turn 18 years of age.  In fact, the Third District Court of Appeal's decision in <u>In re B.R.C.M.</u>, 182 So. 3d 749 (Fla. 3d DCA 2015) (pending review in this Court, SC16-179), addresses an issue that is very similar to the issue in this case, but the Third District's decision involves a child who is currently less than 18 years of age.  Therefore, the legal questions raised are not likely to evade appellate review, and we cannot ignore the mootness of this particular case.

### III.  CONCLUSION

Because O.I.C.L. is no longer a child as defined in chapter 39 and cannot be adjudicated a dependent child of the State of Florida pursuant to section 39.01(15), we dismiss this case as moot.

It is so ordered.

LEWIS and QUINCE, JJ., concur.
CANADY, J., concurs in result with an opinion.
LABARGA, C.J., dissents with an opinion, in which PARIENTE and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., concurring in result.

I agree with the view that this case should be discharged because it is moot. I would conclude that the retention of jurisdiction provided for in section 39.5075(6), Florida Statutes, does not apply when—as in this case—a private petition has been filed.

The full statutory context makes clear that even if the court may act on a petition after a child has reached 18 years of age, the authority to do so extends only to petitions filed either by the Department of Children and Families or a community-based care provider—not to petitions filed by a private party. The petitions referred to in section 39.5075(6), which are subject to extended jurisdiction, must be understood to be petitions filed in accordance with section 39.5075(4), which provides: "If the child may be eligible for special immigrant juvenile status, the department or community-based care provider shall petition the court for an order finding that the child meets the criteria for special immigrant juvenile status."

LABARGA, C.J., dissenting.

Although O.I.C.L. has already reached majority age, "[i]t is well settled that mootness does not destroy an appellate court's jurisdiction . . . when the questions raised are of great public importance or are likely to recur." Del Valle v. State, 80 So. 3d 999, 1005 (Fla. 2011) (quoting Holly v. Auld, 450 So. 2d 217, 218 n.1 (Fla. 1984)).  The prevalence of seventeen-year-old unaccompanied minors seeking adjudications of dependency presents precisely the type of situation that is "capable of repetition, yet evading review." Roe v. Wade, 410 U.S. 113, 125 (1973) (quoting S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911)).  In these cases, if reaching majority age renders the case moot, dependency litigation will rarely survive much beyond the trial stage, and appellate review will be effectively denied.

In fiscal year 2015, an estimated 39,970 unaccompanied minors were apprehended at the border.[2]  Approximately 2,908 of those children were released to sponsors in Florida.[3]  This number increased in fiscal year 2016, with

---

2. Southwest Border Unaccompanied Alien Children (0-17 yr old) Apprehensions, U.S. CUSTOMS & BORDER PATROL, https://www.cbp.gov/newsroom/stats/southwest-border-unaccompanied-children/fy-2016 (last visited July 11, 2016).

3. Unaccompanied Children Released to Sponsors by State, OFFICE OF REFUGEE RESETTLEMENT (August 25, 2016),

approximately 4,264 unaccompanied minors released to sponsors in Florida as of July 2016.[4]  One of the common types of relief sought by these children is Special Immigrant Juvenile Status (SIJS), which allows unaccompanied minors to apply for lawful permanent residency in the United States.  As noted by the majority opinion, "a state court's adjudication of dependency or other custody determination is the first step in the process of [] obtaining SIJ status."  Majority op. at 5.  See also In re Y.V., 160 So. 3d 576, 580 (Fla. 1st DCA 2015).  Notably, "[s]eventeen-year-olds are the most frequent SIJS applicants—from 1999 to 2012, the median age has hovered between seventeen and eighteen annually, with an overall median age of 17.4."  Lailah Hlass, States & Status: A Study of Geographical Disparities for Immigrant Youth, 46 Colum. Hum. Rts. L. Rev. 266, 290 (2014).  This appears to be the most common age for various reasons:

> First, the average age of unaccompanied minors entering the country is around sixteen or seventeen, and . . . many of these youths are SIJS eligible.  Further, for someone who has not been apprehended by the immigration agency, this is the age at which he may consider getting a driver's license or taking college entrance tests.  These events can trigger a realization that he is unauthorized, because he does not have the required identification.  At this point, he may be more likely to seek help and get screened for eligibility.  Lastly, age seventeen might be so common because many state laws lose jurisdiction over youths at age eighteen, so SIJS-eligible youths eighteen and older may not be able to obtain the predicate state court order and therefore never apply

---

http://www.acf.hhs.gov/programs/orr/programs/ucs/state-by-state-uc-placed-sponsors.

4.  See note 2, supra.

for federal immigration protection. These hypotheses are certainly not exhaustive, but they are reflective of the conventional understanding of child advocates.

Id. at 290-91 (footnotes omitted).

The Fourth District recognized that dependency petitions filed on behalf of unaccompanied minors have become increasingly common, observing that:

> These types of petitions . . . routinely share the following common elements: the child is about to turn eighteen years old; the Department of Children and Families ("DCF") neither supports nor opposes the child's petition; the child agrees not to seek any services from the State; one or more of the child's parents sign consent forms agreeing to entry of a dependency order; no testimony is presented to the court opposing the petition; and, DCF files no briefs in any subsequent appeal. As courts are likely to continue encountering more of these cases in the future, we believe some guidance on the proper handling of these cases is required.

O.I.C.L. v. Dep't of Children & Families, 169 So. 3d 1244, 1247 (Fla. 4th DCA 2015).

The frequency with which such dependency petitions are filed, and the failure of trial courts to make adequate factual findings—as occurred in this case—create a situation in which improper denials are likely to recur. Yet, with unaccompanied minors customarily filing petitions within a year or two of reaching eighteen, these cases are likely to evade review. Here, we have recognized that the Fourth District's conclusion conflicts with the decisions of the First District in In re Y.V. and the Third District in In re T.J. Accordingly, I would

- 10 -

address the question of law at issue and provide guidance on the proper handling of these cases.

What is more, I would not dismiss this case as moot because it is clear that the federal and state statutory schemes, which provide a pathway for unaccompanied minors to obtain lawful permanent residency via SIJS, allow for retention of jurisdiction. Although chapter 39 specifies that only a child may be found dependent, O.I.C.L. was a child at the time the dependency petition was filed and an appropriate adjudication by the trial court could have resulted in the retention of jurisdiction over his dependency case.

The concurring in result opinion asserts that the retention of jurisdiction provided for in section 39.5075(6) does not apply when a private petition has been filed. This assertion confuses the statutory schemes laid out in title 8 U.S.C. § 1101(a)(27)(J), and section 39.5075, Florida Statutes. A private petition for an adjudication of dependency—like the one filed in this case—petitions a state court for a determination of dependency in the same manner as a petition filed by DCF or a community-based care provider. Dependency proceedings are commenced when a petition alleging dependency is filed, and "[a]ll proceedings seeking an adjudication that a child is dependent shall be initiated by the filing of a petition <u>by an attorney for the department, or any other person</u> who has knowledge of the facts alleged or is informed of them and believes that they are true." § 39.501(1), Fla.

Stat. (emphasis added).  See also Fla. R. Juv. P. 8.201(a)(2).  It is only after a determination of dependency by the state court and a determination of eligibility for SIJS that "the department or community-based care provider shall petition the court for an order finding that the child meets the criteria for [SIJS]." § 39.5075(4), Fla. Stat.  Thereafter, "the department or community-based care provider shall . . . file a petition for [SIJS] and the application for adjustment of status to the appropriate federal authorities on behalf of the child."  § 39.5075(5), Fla. Stat.  Additionally, the court may retain jurisdiction over a child's dependency case until the child's twenty-second birthday pending the disposition of the SIJS petition and application by federal immigration authorities.  § 39.5075(6), Fla. Stat.

Accordingly, the fact that a private petition for adjudication of dependency was filed on behalf of O.I.C.L. is not dispositive of whether the state court may retain jurisdiction over his dependency case for the purpose of obtaining SIJS.  The determining factor regarding retention of jurisdiction is whether the petition for SIJS and the application for adjustment of status were filed before he reached eighteen.  For this reason, it is imperative to consider whether the trial court made an appropriate determination of dependency that would have qualified O.I.C.L. for SIJS before his eighteenth birthday.

**BACKGROUND**

At the time this case arose, seventeen-year-old O.I.C.L. resided with his uncle who provided him with supervision and care on a voluntary basis. Nonetheless, a private petition for dependency was filed on behalf of O.I.C.L. alleging that he was dependent under sections 39.01(15)(a) and 39.01(15)(e) because he had "been abandoned . . . by [his] parent or parents or legal custodians," and had "no parent or legal custodians capable of providing supervision and care." O.I.C.L., 169 So. 3d at 1246. The petition asserted that O.I.C.L.'s father abandoned him before his birth, that his mother neglected him since he was twelve years old, and that his mother was unable to provide support as of the time he turned seventeen years old and forced him to leave the home. The trial court conducted a brief evidentiary hearing during which O.I.C.L. testified about these circumstances. DCF did not appear in the trial court proceeding or on appeal before the Fourth District, and O.I.C.L.'s allegations and testimony were not contested.

After the evidentiary hearing, the trial court entered a final order denying the petition for dependency. The trial court found that the O.I.C.L. had been living with his uncle since being released to him by ORR.[5] Consequently, the trial court

_____

5. Notably, while the petition alleged and the trial court found that ORR released O.I.C.L. to the care and custody of his uncle, Rigoberto Castro Lopez, the

- 13 -

reasoned that O.I.C.L. was not dependent because he was cared for by a "ready, willing, and able relative" against whom there were no allegations of abandonment, abuse, or neglect.

On appeal, the Fourth District affirmed the denial of the petition. As noted by the majority opinion, the Fourth District explained that O.I.C.L. was released by ORR to his uncle, who qualified as a caregiver pursuant to section 39.01(10), Florida Statutes. Thus, the Fourth District concluded: "As there were no allegations of abandonment, abuse, or neglect against the uncle, a presumption arose that he was indeed 'capable of providing [both] supervision and care' to the Child." Id. at 1248.

This Court subsequently granted review of the Fourth District's decision based on express and direct conflict with In re Y.V. and In re T.J.

**CONFLICT**

In In re Y.V., the First District reversed the dismissal of a private petition for dependency filed on behalf of an unaccompanied minor who was being cared for by his uncle in Florida. 160 So. 3d at 577. The petition alleged that Y.V. was a dependent child pursuant to sections 39.01(15)(a) and 39.01(15)(e) because he was abused and abandoned by his parents in Honduras and had no parent or legal

record before this Court identifies O.I.C.L.'s sponsor as Mario Lopez Castro, his first cousin.

- 14 -

custodian capable of providing supervision and care. Id. Yet the trial court dismissed the petition without a hearing. Id. at 578. In reversing the trial court's decision, the district court reasoned that section 39.01(15) establishes seven independent grounds for adjudicating a child dependent and that the petition alleged sufficient facts. Id. Thus, the First District concluded that even though Y.V. had locatable, living parents in his country of origin and was being voluntarily cared for by an adult relative in Florida, the petition established a prima facie case for dependency. Id. at 579. Thus, the district court remanded the case for further proceedings. Id. at 581.

Similarly, in In re T.J., the Third District reversed the summary denial of a private petition for dependency filed on behalf of an unaccompanied minor who was being voluntarily cared for by an aunt in Florida after her mother's death. 59 So. 3d at 1189. The petition alleged that T.J.'s father left her mother when the child was an infant, and the father's whereabouts were unknown at the time the petition was filed. Id. The Third District determined that the petition established a prima facie case for dependency under section 39.01(15)(e) based on allegations that T.J.'s mother was deceased, her father had not been located after a diligent search, and her aunt did not have any judicially conferred status as a custodian or guardian. Id. at 1190. Accordingly, the district court remanded the case for further proceedings. Id. at 1194.

It is apparent from these cases that there is conflict regarding whether a district court is required to remand a case where the trial court failed to make adequate factual findings relating to each ground for dependency for which sufficient facts were alleged in the dependency petition. Accordingly, I would resolve the conflict presented here.

**ANALYSIS**

Section 39.01(15), Florida Statutes, provides seven independent grounds upon which a child may be adjudicated dependent. See § 39.01(15), Fla. Stat. See also In re Y.V., 160 So. 3d at 578. Florida Rule of Juvenile Procedure 8.310(a)(1) requires that a dependency petition "allege sufficient facts showing the child to be dependent based upon applicable law." "[W]hen a Florida court is presented with a dependency petition, the court's concern should be whether the allegations made in support of an adjudication of dependency satisfy Florida's statutory grounds for such an adjudication, not whether the juvenile hopes to obtain SIJ status." In re Y.V., 160 So. 3d at 581. Moreover, "[i]f federal law grants a right to alien children to regularize their immigration status by first obtaining a state court adjudication of dependency, then there is no basis for failing to declare a child dependent so long as he or she meets the statutory criteria for dependency." F.L.M. v. Dep't of Children & Families, 912 So. 2d 1264, 1269 (Fla. 4th DCA 2005). Thus, when a petition establishes a prima facie case for dependency, it is the role of the trial

- 16 -

judge to "act as the fact-finder, make decisions to accept or reject testimony, and then make its ruling." O.I.C.L., 169 So. 3d at 1253 (Forst, J., dissenting).

Accordingly, when a petition alleges sufficient facts for dependency under any of the seven statutory grounds, the trial court must make factual findings as to each separate ground in order to properly determine whether a child is dependent. In this case, O.I.C.L.'s petition alleged facts presenting a prima facie case for dependency under section 39.01(15)(a) and the trial court appropriately considered whether O.I.C.L. was abandoned, abused, or neglected. The trial court found that O.I.C.L.'s uncle qualified as a caregiver and that there was no evidence that O.I.C.L. was abandoned, abused, or neglected by his caregiver. However, the trial court failed to address O.I.C.L.'s dependency under section 39.01(15)(e), despite the petition alleging sufficient facts.

To properly determine O.I.C.L.'s dependency under section 39.01(15)(e), the trial court must examine whether he had a parent or legal custodian capable of providing supervision and care. As evidenced by the petition and O.I.C.L.'s testimony, his father was unknown, his mother was unable to provide him with basic necessities and support, and he was forced to leave the home.[6] The trial court

---

6. See C.D. v. Dep't of Children & Families, 816 So. 2d 1229, 1230 (Fla. 5th DCA 2002) (in which a child was found dependent pursuant to section 39.01(15)(e) because the mother was financially unable to provide basic necessities, such as food and water).

failed to inquire further about the mother's capability of providing supervision and care in light of these allegations and, despite the Fourth District's assumption, there was no evidence that the mother granted permission for O.I.C.L. to reside with his uncle. Furthermore, the trial court made no findings about whether the uncle was O.I.C.L.'s legal custodian which, pursuant to section 39.01(34), entails a legal status that is determined by a court. "[T]herefore the uncle's care for the Child would not automatically rule out a finding of dependency under section 39.01(15)(e)." O.I.C.L., 169 So. 3d at 1252 (Forst, J., dissenting). Although the uncle qualified as a caregiver and provided O.I.C.L. with supervision and care, these facts alone do not create a presumption that O.I.C.L. had a parent or legal custodian capable of providing supervision and care.

The trial court in this case did not apply the correct law when it failed to make any factual findings about whether O.I.C.L. had a parent or legal custodian capable of providing supervision and care. Moreover, the trial court ruling is not supported by competent substantial evidence because the testimony from O.I.C.L. and his uncle did not establish that O.I.C.L. had a parent or legal custodian capable of providing supervision and care. Thus, the trial court's denial of the dependency petition with regard to section 39.01(15)(e) cannot be sustained. See C.A. v. Dep't of Children and Families, 958 So. 2d 554, 557 (Fla. 4th DCA (2007)) ("A court's final ruling of dependency . . . will be sustained on review if the court applied the

correct law and its ruling is supported by competent substantial evidence in the record. . . . reversal is required where the evidence is legally insufficient to sustain the findings of the trial court."). See also C.R. v. Dep't of Children & Family Servs., 53 So. 3d 240, 242 (Fla. 3d DCA 2010); G.C. v. Dep't of Children & Families, 791 So. 2d 17, 19 (Fla. 5th DCA 2001). Accordingly, the Fourth District should have remanded this case for further proceedings.

The conflict of decisions presented here and the apparent need for guidance in the lower courts merit a suitable resolution by this Court. Accordingly, I dissent from the majority's opinion that this case is moot, and would quash the Fourth District's decision and remand this case for an adequate evidentiary hearing.

PARIENTE and PERRY, JJ., concur.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

   Fourth District - Case No. 4D15-53

   (Palm Beach County)

Jan Peter Weiss and Liah Shitomi Frazier, West Palm Beach, Florida,

   for Petitioner

Stephanie Christina Zimmerman, Deputy Director & Statewide Director of Appeals, Children's Legal Services, Bradenton, Florida,

   for Respondent

Bernard Pines Perlmutter of The University of Miami School of Law Children & Youth Law Clinic, Coral Gables, Florida,

for Amici Curiae The University of Miami School of Law Children & Youth Law Clinic, Health Rights Clinic, and Immigration Clinic

Stephanie Lauren Varela, Julissa Rodriguez, Elliot H. Scherker, Katherine Marie Clemente, and Joshua Eli Truppman of Greenberg Traurig, P.A., Miami, Florida; and Robin L. Rosenberg, Tampa, Florida,

for Amicus Curiae Florida's Children First

Paolo Giuseppe Annino and Brandon Ray Smoot, Tallahassee, Florida,

for Amicus Curiae Florida State University College of Law Public Interest Law Center

Larry Scott Rifkin, Jacqueline Villalba of Rifkin & Fox-Isicoff, P.A., Miami, Florida; and Edward Maurice Mullins of Astigarraga Davis Mullins & Grossman P.A., Miami, Florida,

for Amici Curiae The International Law Section of The Florida Bar and The Public Interest Law Section of The Florida Bar

Jennifer Lissette Anzardo, Miami, Florida,

for Amicus Curiae Americans for Immigrant Justice