432 So.2d 1320 (1983)
DAVE ZINN TOYOTA, INC., d/b/a Isuzu of North Miami, Appellant,
v.
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Hollywood Isuzu, Inc., and American Isuzu Motors, Inc., Appellees.
No. 82-1255.
District Court of Appeal of Florida, Third District.
April 12, 1983.
Leib & Martinez and Jose E. Martinez and Pamela Olson Scott, Coral Gables, for appellant.
Myers, Kenin, Levinson, Ruffner, Frank & Richards and Martin S. Friedman; Enoch J. Whitney and Michael J. Alderman, Asst. General Counsel, Tallahassee, Quinton, Lummus, Dunwody & Adams, Miami, for appellees.
Before HUBBART, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
Hollywood Isuzu, Inc. applied to the Florida Department of Highway Safety and Motor Vehicles for a motor vehicle dealer license to operate an Isuzu automobile dealership in Hollywood, Florida. Dave Zinn Toyota, Inc., an existing dealer of Isuzu automobiles in North Miami doing business *1321 as Isuzu of North Miami, filed an objection to Hollywood Isuzu's application. Zinn's existing franchise and Hollywood's proposed franchise were each pursuant to contracts with American Isuzu Motors, Inc., the exclusive American importer of Isuzus, and, pertinent here, the licensee.
The matter was referred for hearing and recommendation to the Division of Administrative Hearings. Upon the evidence presented, the Division recommended that Hollywood's application be approved, and such recommendation being adopted by the Director of Motor Vehicles, the license was granted. Zinn appeals.
When, in 1981, the licensee began to establish its network of dealerships in the United States, it planned to have four Isuzu dealers in Broward County. At the time of Hollywood's application, the licensee had three dealers in Broward County: Plantation Isuzu, located on U.S. Highway 441 six miles north of, and on the same road as, the proposed Hollywood Isuzu dealership; and two dealerships located in the eastern portion of Broward County on U.S. 1. Zinn's North Miami dealership, also on U.S. 441, is one of two dealerships in adjacent Dade County and is located 4.6 miles south of the proposed location of Hollywood Isuzu. The contractual arrangement between the licensee and its dealers does not assign a specific or exclusive area of responsibility or territory to the dealer.
Section 320.642, Florida Statutes (1981), establishes the standard for the issuance or denial of a motor vehicle dealer license:
"The Department shall deny an application for a motor vehicle dealer license in any community or territory where the licensee's presently licensed franchised motor vehicle dealer or dealers have complied with licensee's agreements and are providing adequate representation in the community or territory for such licensee. The burden of proof in showing inadequate representation shall be on the licensee."
The sole issue on appeal is whether the licensee, American Isuzu Motors, satisfied its burden to show that its presently licensed dealers, including Zinn, were inadequately representing the community or territory for such licensee.[1]
The evidence presented by the licensee in support of Hollywood's application consisted in part of vehicle registration data compiled by R.L. Polk, conceded by the appellant to be an authoritative source of such data in the automotive industry. This data indisputably showed that Isuzu's share of the import car market in the State of Florida was no greater than its share of the Broward County market and twice as great as its share of the South Florida or Miami metropolitan area, which includes Broward County. The licensee also presented evidence that the Miami metropolitan area was one of four market areas in the state targeted by Isuzu for initial sales penetration. From this evidence, the hearing officer found:
"American Isuzu is seeking to penetrate the broad South Florida market by the introduction of various dealerships. A primary source of customers within this area is located in the western portions of Broward and Dade Counties. Through existing dealerships, Isuzu has obtained a market penetration reflected as a percentage of total sales which equals its penetration statewide in Florida. American Isuzu's entry into the American market would be facilitated by strongly penetrating certain market areas, then expanding from that base. American Isuzu has sought to accomplish this strategy by locating numerous dealers in South Florida. Despite this emphasis, American Isuzu has not penetrated South Florida more pervasively than it has the state, generally. American Isuzu is clearly capable of marketing additional automobiles in South Florida. .. ."
*1322 The Director of Motor Vehicles, rejecting Zinn's exception to this finding, came to a like conclusion:
"Isuzu of America has been marketing its product in the United States for less than one year and has not introduced dealerships throughout Florida, so an equal or slightly higher market penetration in Broward County relative to the rest of the state cannot be said to reflect adequate representation."
In our view, the evidence that the licensee had not penetrated the Miami metropolitan area more pervasively than it had the state generally, despite its marketing emphasis in the Miami metropolitan area, reasonably supports the inference that the presently licensed dealers, including Zinn, were providing inadequate representation in the Miami metropolitan territory or community and is thus sufficient to justify the director's decision.[2]See Duval Utility Co. v. Florida Public Service Commission, 380 So.2d 1028, 1031 (Fla. 1980); De Groot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957).
Zinn says, however, that even if, for the sake of argument, the evidence showed that the Miami metropolitan area, or even Broward County within it, were being inadequately served by existing Isuzu dealerships, there was no proof whatsoever to show that the West Hollywood territory or community, the proposed site of the new dealership, was inadequately represented by existing dealerships. We think this argument misses the mark.
The non-exclusive territory or community in which Zinn operates and Hollywood proposed to operate was, as the director found, the Miami metropolitan area. It was established to the director's satisfaction by substantial competent evidence that such territory or community was inadequately represented by existing dealers located there. While it may be true that there is no proof that an identifiable plot, that is, West Hollywood, within this South Florida territory had not been cultivated, there is no need for such proof where the sales production of the existing dealers taken together is inadequate by territorial standards. Contrary to the appellant's contention, the lesson of Bill Kelley Chevrolet, Inc. v. Calvin, 322 So.2d 50 (Fla. 1st DCA 1975), is not that the licensee was required to prove that the existing dealers were inadequately representing the identifiable plot of West Hollywood. The holding of Bill Kelley Chevrolet, as we read it, is that even where the licensee fails to establish that the existing dealers are inadequate in respect to their servicing of the territory as a whole, the licensee may still show that within the territory "there remains an identifiable plot not yet cultivated, which could be expected to flourish if given the attention which the others in their turns received ...," id. at 52, and if such a showing is made, the director may justifiably conclude that the cultivation of the territory is inadequate. However, the need to show an "identifiable plot not yet cultivated" does not arise where, as in the present case, proof is presented that the territory as a whole is inadequately represented. It is enough under such circumstances, as the director found, that West Hollywood, already the site of a cluster of competing imported car dealers, was a logical location for Isuzu, and that by locating there, Isuzu's visibility would be increased and its Miami metropolitan sales stimulated.
Finally, keeping in mind that:
"[t]he purpose of § 320.642, F.S. 1973, is to prevent powerful manufacturers from taking unfair advantage of their dealers by overloading a market area with more dealers than can be justified by the legitimate interests of the manufacturer and its dealers, existing and prospective[,] Plantation Datsun, Inc. v. Calvin, 275 So.2d 26 (Fla.App. 1st, 1973) ..., not to foster combinations to prevent the introduction of dealer competition which is *1323 reasonably justified in terms of market potential." Bill Kelley Chevrolet, Inc. v. Calvin, 322 So.2d at 52 (emphasis supplied),
we reject appellant's contention that the licensee's restrictions on the number of cars provided to each of its dealers somehow precluded it from showing that existing dealers who had sold their allotted number inadequately represented the territory. These restrictions, as the director found, served the licensee's legitimate interest in establishing and maintaining average-sized dealerships.
Affirmed.
NOTES
[1] There is no issue as to whether Zinn, the existing Isuzu dealer, complied with its license agreement. The hearing officer found that Zinn's personnel were fully capable of operating a successful dealership and adequately sold and serviced Isuzu vehicles. That finding is not challenged by the appellees.
[2] While these statistics do not inexorably lead to such an inference, in that the differential might be attributable, for example, to a targeting of the metropolitan Miami area by competing imported car companies exceeding their targeting of other metropolitan areas, we cannot say that the inference drawn was unreasonable.