# IN THE SUPREME COURT OF IOWA

No. 20–0837

Submitted February 23, 2022—Filed June 3, 2022

**SIOUX CITY TRUCK SALES, INC.,**

Appellant,

vs.

**IOWA DEPARTMENT OF TRANSPORTATION** and **PETERBILT MOTORS COMPANY,**

Appellees,

and

**ALLSTATE PETERBILT OF CLEAR LAKE,**

Intervenor.

___

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.

A franchisee appeals from a district court ruling that affirmed on judicial review the Iowa Department of Transportation's decision approving the franchiser's application for a new dealership franchise. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Appel, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman and Mansfield, JJ., joined. McDonald, J., filed a dissenting opinion, in which Oxley and McDermott, JJ., joined.

Jeffrey M. Goldstein (argued) of Goldstein Law Firm, PLLC, Washington, D.C., pro hac vice, and Anthony P. Lamb (until withdrawal) and Ryland Deinert of Klass Law Firm, L.L.P., Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Michelle E. Rabe (argued), Assistant Attorney General, for appellee Iowa Department of Transportation.

Stephen E. Doohen of Whitfield & Eddy, P.L.C., Des Moines, and Mark T. Clouatre (argued), John P. Streelman, and Jacob F. Fischer of Nelson Mullins Riley & Scarborough LLP, Denver, Colorado, pro hac vice, for appellee Peterbilt Motors Company.

Joseph G. Gamble of Duncan Green, P.C., Des Moines, and John N. Bisanz, Jr., of Henson & Efron, P.A., Minneapolis, Minnesota, pro hac vice, for intervenor Allstate Peterbilt of Clear Lake.

**APPEL, Justice.**

In this case, we consider the scope of the term "community" when the Iowa Department of Transportation (DOT) considers whether "good cause" exists to permit a franchiser to create dueling franchises in a geographic area under Iowa Code section 322A.4 (2021). The question boils down to this: in considering whether the establishment of an additional franchisee in a geographic area is in the public interest, is the DOT required to consider the investments made by the existing franchisee and the impact of the action on retail motor sales solely in the areas where the existing franchisee and the additional franchisee would compete, or must the DOT consider the investment and impacts across the entire geographic area of the existing franchisee?

The question turns on the meaning of the term "that community" in Iowa Code sections 322A.4 and 322A.16. The franchiser in this case argues that the phrase "that community" must mean the twenty-three-county geographic area in which the existing franchisee and the proposed additional franchisee would compete. The existing franchisee, however, claims that the phrase "that community" means the entire seventy-one-county area in which the existing franchise conducts business, even though the existing franchisee and the proposed new franchisee would compete only in twenty-three of the seventy-one counties.

The existing franchisee's argument is based upon Iowa Code section 322A.1(2), which provides that the term "community" in the statute means "the franchisee's area of responsibility as stipulated in the franchise." Iowa Code

§ 322A.1(2). But the franchiser notes that the statutory definition does not apply where "the context otherwise requires."

Both the Administrative Law Judge (ALJ) and the DOT ruled in favor of the franchiser's interpretation, concluding that the twenty-three-county area where the additional franchisee would compete with the existing franchisee was the relevant geographic area to consider when determining the presence of "good cause" under Iowa Code section 322A.4. Using the smaller geographic area, the ALJ and the DOT found that good cause existed for the additional franchisee.

The existing franchisee sought judicial review of the agency action, which was affirmed by the district court. The court of appeals reversed the district court, holding that the DOT should have applied the statutory definition of community and that, as a result, the DOT erred in considering the impacts of the additional franchise only in the twenty-three counties where the new franchisee would compete with the existing franchisee.

We granted further review. For the reasons expressed below, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**I. Background Facts and Proceedings.**

**A. Overview of the Facts.** Peterbilt Motors Company (Peterbilt) is a truck manufacturer that distributes its products through a network of fifty-five dealership groups. Sioux City Truck Sales (SCTS) is one of Peterbilt's dealership groups—operating in Sioux City, Altoona, and Council Bluffs, Iowa, and in Lincoln and Norfolk, Nebraska.

Under Peterbilt and SCTS's dealer agreement, Peterbilt is the franchiser and SCTS is the franchisee. Pursuant to the agreement, SCTS agrees to sell and provide service for Peterbilt's products in its assigned, nonexclusive area of responsibility (AOR). Under the agreement, Peterbilt, in its sole discretion, may appoint additional dealers in the area upon providing SCTS with a 180-day notice.

SCTS's AOR includes counties in Nebraska and seventy-one counties in Iowa. Included in SCTS's Iowa AOR are twenty-three counties in the Clear Lake area. The Clear Lake area is located in close proximity to Interstate 35 and experiences heavy truck traffic. Further, the Clear Lake area is more than 100 miles from any other Peterbilt dealer location.

Peterbilt later developed a proprietary engine that it believed would require additional service locations within SCTS's AOR. Beginning in 2010, Peterbilt recommended that SCTS develop dealership locations in both Lincoln, Nebraska and Clear Lake, Iowa to ensure an adequate dealer network to service Peterbilt's engines. SCTS responded to Peterbilt's request by opening a dealership in Lincoln, but not in the Clear Lake area.

On December 12, 2012, Peterbilt sent a letter to SCTS identifying Clear Lake as an area that needed a dealership and asked SCTS to take action. Peterbilt subsequently made repeated requests related to opening a dealership in the Clear Lake market but SCTS remained noncommittal. Peterbilt then prepared what it called a "White Spot" report with various metrics to show that a full-service dealership would be profitable and welcome by the Clear Lake area

market. Again, SCTS's response in April 2015, showed that it had not made any decisions about Clear Lake.

In June of 2016, Peterbilt met with SCTS and indicated that the need for a dealership in Clear Lake was urgent enough that if SCTS did not want to open a dealership there, another party would be found to do so. Eventually, Peterbilt sent a letter of dual assignment on November 1. In response, SCTS proposed to open a parts-only store in Clear Lake, noting in its email to Peterbilt: "[W]e could not find an existing facility in the Clear Lake area with service bays." SCTS's attempt to salvage the situation, however, did not succeed as Peterbilt was not interested in a parts-only store that did not include services on Peterbilt equipment. Despite not having Peterbilt's approval as required under the agreement, SCTS opened a parts-only store in Clear Lake.

On August 18, 2017, after the contractual 180-day notice of intent to dual assignment had passed, Peterbilt sought approval from the DOT under Iowa Code section 322A.4 to appoint Allstate as a dealer in the Clear Lake area.

**B. Department of Inspection and Appeals ALJ Finding.** After a three-day hearing and canvassing the extensive record, an ALJ found that as of November 1, 2016, good cause existed for an additional franchise in the Clear Lake area under Iowa Code sections 322A.4 and 322A.16. *See* Iowa Code §§ 322A.4, .16. The ALJ further found that good cause was not affected by SCTS's later-expressed willingness to add a parts-and-service dealership because Peterbilt had a legitimate business concern that SCTS's willingness was only nominal in nature. Notably, the ALJ considered the impacts of the additional

franchisee only in the twenty-three counties in which the new franchisee would be competing with the existing franchisee, not the larger seventy-one-county area in Iowa and additional territory in Nebraska that was within SCTS's AOR.

**C. Appeal to the Iowa DOT.** On appeal, SCTS argues that the ALJ erred in using an incorrect definition of "community" in its analysis under sections 322A.4 and 322A.16. SCTS claimed that based on the definition in Iowa Code section 322A.1(2), the community in question should be the entire seventy-one-Iowa-county portion of SCTS's AOR, not the Clear Lake community which only encompassed twenty-three counties as the ALJ understood it.

The DOT agreed with the ALJ's interpretation of community as limited to those counties within SCTS's AOR that were subject to dual assignment. Specifically, the DOT found that there was no dispute that SCTS's entire AOR, including the areas in Nebraska and seventy-one Iowa counties, was not being subject to dual assignment. Rather, only twenty-three counties were included in the Clear Lake area where Peterbilt sought approval for new a franchisee.

Further, the DOT reasoned that consideration of the good cause factors could only be meaningful if community was defined in the same way for both entities, as SCTS's entire AOR was not subject to dual assignment. As a result, the DOT concluded that the only logical community to be used for analysis would be the area subject to dual assignment, meaning the twenty-three-county Clear Lake area. As a result, the DOT affirmed the ALJ's decision in favor of Peterbilt.

**D. District Court Ruling on Judicial Review of Agency Action.** Upon judicial review, the district court affirmed the DOT's decision granting Peterbilt's

request. On the issue of the correct legal interpretation of community under Iowa Code sections 322A.4 and 322A.16, the district court held that the phrase "that community" in Iowa Code section 322A.16 referred to the twenty-three-county Clear Lake area. The district court reasoned that the legislature used modifiers such as "any" and "that" before "community" to qualify the meaning of community from the entire AOR to the narrower area subject to dual assignment. *See* Iowa Code §§ 322A.4, .16. The district court found the agency's reading of chapter 322A "properly capture[d] the public interest in establishing and maintaining for consumers continued and adequate access to dealer services in all relevant and appropriate areas," and was not "irrational, illogical, or wholly unjustifiable."

**E. Decision of the Court of Appeals.** On appeal, the court of appeals focused solely on the correct statutory interpretation of the word "community" under chapter 322A. The court of appeals held that the agency erred by not applying the statutory definition of community in determining good cause under Iowa Code section 322A.4. The court of appeals reasoned that the agency as well as the district court's context-based and fact-driven approach would "render the definitional section meaningless." As a result, the court of appeals held that the agency erred in not considering the implications of the additional franchise over the entire seventy-one counties of SCTS's AOR.

**F. Issues on Appeal.** The only issue raised by SCTS in this appeal is whether the DOT used the proper definition of "community" in evaluating Peterbilt's application under Iowa Code section 322A.4. SCTS contends that,

under the statute, community is specifically defined as "the franchisee's area of responsibility as stipulated in the franchise." *Id.* § 322A.1(2). SCTS argues that the statute compels that the community in question should be the entire seventy-one-county AOR, and not just the twenty-three-county Clear Lake area. Specifically, SCTS points out that the word "community" is mentioned multiple times in the entire chapter 322A, and that courts should give identical words identical meaning when used in several places in a chapter. SCTS further asserts that the district court erred in overemphasizing the terms "any" and "that" in construing sections 322A.4 and 322A.16.

Peterbilt responds by noting that SCTS fails to recognize that the statutory definition of community applies "unless the context otherwise requires." *Id.* § 322A.1. Further, Peterbilt asserts that there is no showing that the relevant community under Iowa Code section 322A.1(2) is that of the existing franchisee and not the *proposed* franchisee. Peterbilt argues that consideration of good cause and public interest by focusing on the area of competition makes the most sense. According to Peterbilt, it would make no sense for the DOT to consider investments or markets in Nebraska in determining whether there is good cause to open an additional franchisee in the twenty-three Iowa counties surrounding Clear Lake.

**II. Standard of Review.**

Decisions of the DOT are subject to judicial review under Iowa Code chapter 17A. *Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 421 (Iowa 2002) (citing *Peterson v. Iowa Dep't of Transp.*, 508 N.W.2d 689, 691

(Iowa 1993)). No party has suggested that the legislature has vested interpretation of law in the discretion of the agency. Iowa Code § 17A.19(10)(*c*). Therefore, we review the agency's interpretation for errors at law. *Id.*

**III. Discussion.**

**A. Overview of the Statutory Framework.** As we observed thirty-five years ago in *Beckman v. Carson,* the Iowa legislature passed the Motor Vehicle Franchisers Act, codified in chapter 322A, "to provide for fair trade practices by motor vehicle franchisers." 372 N.W.2d 203, 207 (Iowa 1985) (quoting 1970 Iowa Acts ch. 1160, preamble).

A reading of the preamble of the Motor Vehicle Franchisers Act shows that the promotion of fair trade practices is consumer protection oriented. *See* 1970 Iowa Acts. ch. 1160, preamble. The preamble begins by declaring that public interests affect the sale and distribution of motor vehicles. *Id.* Buyers of motor vehicles need to be able to trust and have confidence that services will continue to be available even after the purchase. *Id.* It further emphasizes that access to motor vehicle service is important to highway safety. *Id.* At the same time, the act recognizes that allowing an additional dealership of the same brand in a community may hinder the dealerships from providing efficient and proper service. *Id.* As such, motor vehicle manufacturers and distributors have an obligation to establish good cause before terminating a franchise agreement or adding additional dealerships that may impact locally available services. *Id.*

The parties agree that Peterbilt's proposed action is to add an additional franchise for the purpose of establishing an additional motor vehicle dealership

in the Clear Lake area. Where additional franchisees are added to an area served by an existing franchisee, the relevant provisions are Iowa Code section 322A.4 and Iowa Code section 322A.16.

Iowa Code section 322A.4 provides a franchiser seeking to add an additional franchisee in a geographic area where there is already an existing franchisee establish that the action is supported by "good cause" and is in "the public interest." Specifically, Iowa Code section 322A.4 provides:

> No franchiser shall enter into any franchise for the purpose of establishing an additional motor vehicle dealership in *any* community in which the same line-make is then represented, unless the franchiser has first established in a hearing held under the provisions of this chapter that there is good cause for such additional motor vehicle dealership under such franchise, and that it is in the public interest.

(Emphasis added.)

In considering whether good cause exists for entering into an additional franchise for the same line-make, Iowa Code section 322A.16 requires the department of inspections and appeals to take into account several factors, including but not limited to:

> 1. Amount of business transacted by other franchisees of the same line-make in *that community*.
>
> 2. Investment necessarily made and obligations incurred by other franchisees of the same line-make, in *that community*, in the performance of their part of their franchises.
>
> 3. Permanency of the investment.
>
> 4. Effect on the retail motor vehicle business as a whole in *that community*.
>
> 5. Whether it is injurious to the public welfare for an additional franchise to be established.

6. Whether the franchisees of the same line-make in *that community* are providing adequate consumer care for the motor vehicles of the line-make which shall include the adequacy of motor vehicle service facilities, equipment, supply of parts and qualified service personnel.

(Emphasis added.)

Additionally, Iowa Code section 322A.11 provides that certain factors cannot be considered in determining good cause for establishing an additional dealership in a community for the same line-make:

1. The sole fact that franchiser desires further penetration of the market.

2. The change of ownership of the franchisee's dealership or the change of executive management of the franchisee's dealership, unless the franchiser, having the burden of proof, proves that such change of ownership or executive management will be substantially detrimental to the distribution of the franchiser's motor vehicles in the community and that good cause for the termination or noncontinuation of the franchise or for the establishment of an additional dealership otherwise exists.

3. The fact that the franchisee refused to purchase or accept delivery of any motor vehicle or vehicles, parts, accessories or any other commodity or service not ordered by the franchisee.

4. The fact that the dealership moved to another facility and location within the dealership's community which are equal to or superior to the dealership's former location and facility or the fact that the dealership added an additional line-make to the dealership if the dealership's facility is adequate to accommodate the additional line-make.

5. The fact that the dealership does not meet an index or standard established by the franchiser, unless the franchiser proves that the failure of the dealership to meet the index or standard will be substantially detrimental to the distribution of the franchiser's motor vehicles in the community and that good cause for the termination or noncontinuation of the franchise or for the establishment of an additional dealership otherwise exists.

Finally, the legislature provided a series of definitions in Iowa Code chapter 322A. Specifically, Iowa Code section 322A.1(2) provides that " '*[c]ommunity*' means the franchisee's area of responsibility as stipulated in the franchise." Yet, the legislature declared that the definitions in the chapter should be used "unless the context otherwise requires." *Id.* § 322A.1.

**B. Proper Approach to "Community" In Cases Involving Approval of Additional Franchisees.** Is the "community" at issue here referring to SCTS's entire AOR, or the twenty-three-county Clear Lake area specifically? In other words, which "community" should we consider under the statute?

We begin with the language of the statute. *Rolfe State Bank v. Gunderson,* 794 N.W.2d 561, 564 (Iowa 2011). Here, Iowa Code subsection 322A.1(2) defines "community" as "the franchisee's area of responsibility as stipulated in the franchise." Applying a literal application of this definition, the community in question would be SCTS's entire AOR, which includes counties in Nebraska and seventy-one counties in Iowa.

And yet our inquiry does not end there. While the legislature provided a statutory definition of "community," it also included a "context clause" in the legislation. *See* Iowa Code § 322A.1. Specifically, Iowa Code section 322A.1 provides that the definitions included are to be used "unless the context otherwise requires." *Id.* The context clause sets an important qualification limiting the application of the definitions. *Ruefenacht v. O'Halloran*, 737 F.2d 320, 326 (3d Cir. 1984) (holding that the "context clause" provided "important qualifications" to limit the definitions provided in the Securities Act of 1933),

*aff'd sub nom. Gould v. Ruefenacht*, 471 U.S. 701 (1985). The "context" here does not refer to the peculiar factual circumstances presented by a case, but the context in which a defined term is used within the statute's substantive provisions. *Heiden v. Norris*, 912 N.W.2d 758, 763 (Neb. 2018). In other words, a statutory provision "may require the application of a modified definition of the pertinent statutory terms to carry out the legislature's intent regarding the statutory scheme." *Necanicum Inv. Co. v. Emp. Dep't*, 190 P.3d 368, 370 (Or. 2008) (en banc). The court, in interpreting the context clause, must consider whether, given the factual context and the entire statutory scheme, a particular statutory definition would conflict with one or more aspects of the legislature's goal. *Id.* (citing *Astleford v. SAIF Corp.* (*In re Comp. of Wells*), 874 P.2d 1329, 1333 (Or. 1994) (en banc)).

As stated earlier, the public policies and interests of the act are to establish and maintain for consumers adequate access to dealer services. *Craig Foster Ford, Inc. v. Iowa Dep't of Transp.*, 562 N.W.2d 618, 622 (Iowa 1997) (citing to the preamble of the Motor Vehicle Franchisers Act and noting its focus on ensuring access to motor vehicle services). Included in the public policy of consumer protection is the fair competition between franchisers. *See New England Cable Television Ass'n v. Dep't of Pub. Util. Control*, 717 A.2d 1276, 1293 (Conn. 1998). Ensuring an unstifled competition is in the best interest of the public. *Id.* In light of the statutory purpose, we agree with the district court in finding that the context of adding an additional franchise or dealership under sections 322A.4 and 322A.16 requires a modified definition of "community." The

DOT and the district court were correct in interpreting community as only the portion that is subject to dual assignment, instead of the entire area assigned to SCTS in the dealer agreement.

In contexts other than the addition of another franchisee to a market, the statutory definition works comfortably. For example, if Peterbilt sought to terminate the franchise, the consumers throughout the entire AOR would be impacted by the decision.

The same analysis does not apply, however, when a franchiser seeks to add an additional franchise to a community. When a franchiser seeks to add a new dealership to an area with an existing franchisee, the impact on the consumer is limited to the area of dual competition. Indeed, a number of the factors listed in Iowa Code section 322A.16 are relevant only to the extent there is competition between the existing franchisee and the proposed new franchise, *See, e.g.*, Iowa Code § 322A.16 (1) (amount of business transacted in that community by other franchisees of the same line-make), (4) (effect on motor vehicle business as a whole), (6) (adequate consumer care). The legislature contemplated both the interests of consumer protection and the benefits of competitive services. *Cf. S. New England Tel. Co. v. Conn. Dep't of Pub. Util. Controls*, No. CV074033448S, 2007 WL 3318257, at *6 (Conn. Super. Ct. Oct. 31, 2007) ("There is an obvious policy tension and in some ways an inverse relationship between a highly regulated system insuring consumer protection and a competitive system affording the benefits of competitive services. The balancing of those interests and the design of the system which affords the best

mix of consumer protection and competition is a policy issue for the legislature and the executive agencies."). Under this context, the proper focus, therefore, is the area in which the existing franchisee and the proposed new franchisee would be in direct competition. It would not be logical to consider investments and markets in far-off Lincoln, Nebraska, on the question of whether there is good cause to add a franchisee in the distant Clear Lake, Iowa area. As a result, the agency correctly interpreted the relevant community to be the twenty-three-county Clear Lake area where the existing franchisee and the proposed additional franchisee would engage in competition.

**IV. Conclusion.**

In sum, for the above reasons, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., and Waterman and Mansfield, JJ., join this opinion. McDonald, J., files a dissenting opinion, in which Oxley and McDermott, JJ., join.

#20–0837, *Sioux City Truck Sales v. Iowa Dep't of Transp.*

**McDONALD, Justice (dissenting).**

Iowa Code section 322A.1(2) (2021) defines the term "community" within the meaning of the Motor Vehicle Franchisers Act as "the franchisee's area of responsibility as stipulated in the franchise." The majority disregards the legislature's definition of "community" and substitutes its own "modified definition" of "community." Without irony, the majority concludes that its modified definition of the term better implements the legislature's purpose than the legislature's own definition of the same term. The majority's purposivist rewriting of statutory text breaks with our precedents regarding statutory interpretation. Further, the fact that the majority actually misidentifies the purpose of the statute reveals the shortcomings of its purposivist approach. I respectfully dissent.

Statutory interpretation "is necessarily a textual inquiry as only the text of a piece of legislation is enacted into law." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). Interpretation thus "begins with the language of the statute at issue." *Id.* "Using traditional interpretive tools, we seek to determine the ordinary and fair meaning of the statutory language at issue." *Id.* "If the 'text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to rules of construction.' " *Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021) (quoting *Voss v. State* (*In re Est. of Voss*), 553 N.W.2d 878, 880 (Iowa 1996)).

Because the legislature has already defined the term at issue in this case, the text of the statute could not be more clear. The legislature defined "community" to mean "the franchisee's area of responsibility as stipulated in the franchise." Iowa Code § 322A.1(2). When the legislature chooses to define a term in a statute, this court is bound to apply that definition. *State v. Shorter*, 945 N.W.2d 1, 7 (Iowa 2020) ("When interpreting a particular term, we are bound by any definition provided by the legislature."); *State v. Mathias*, 936 N.W.2d 222, 227 (Iowa 2019) ("If the legislature chooses to define the term in a statute, that definition ordinarily binds us."); *P.M. v. T.B.*, 907 N.W.2d 522, 540 (Iowa 2018) ("When the legislature has defined words in a statute—that is, when the legislature has opted to 'act as its own lexicographer'—those definitions bind us." (quoting *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014))). Definitions that do "not coincide with the legislative definition must yield to the language of the legislature." *Sherwin–Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 425 (Iowa 2010) (quoting *Hornby v. State*, 559 N.W.2d 23, 25 (Iowa 1997)).

Nothing about the legislature's definition of "community" is ambiguous or vague. This is true whether the term is considered in isolation, in context, or as applied. The term "that community" in section 322A.16, detailing the factors to be considered in determining "good cause" to allow additional franchises, simply refers to the specific area of responsibility of a franchisee as stipulated in the particular franchise at issue. Nothing in the text of section 322A.16 requires this court to apply a different definition of "community" than the one the legislature supplied. *See* Iowa Code § 322A.1 (stating the definitions supplied by the statute

apply "unless the context otherwise requires"). And nothing in the text of section 322A.16 suggests the definition of "community" urged by Peterbilt Motors Company—"the portion of the franchisee's community that the franchiser is seeking to appoint an additional dealer in"—is more appropriate than the legislature's chosen definition.

The majority simply disregards the legislature's definition of "community" and our precedents requiring adherence to the legislature's chosen definition. In lieu of the legislature's definition, the majority substitutes a purportedly purposivist definition of "community." In the majority's view, the statute "is consumer protection oriented." Specifically, the majority states the legislature's primary motivation in enacting chapter 322A was to facilitate consumer protection in the form of "adequate access to dealer services." In the majority's view, "unstifled competition is in the best interest of the public" and accomplishing this "statutory purpose . . . requires a modified definition of 'community.' "

The majority's purposivist rewriting of the statute demonstrates the primary failure of this method of interpretation: to the extent this statute has a purpose, the majority misidentifies it. Iowa is not alone in enacting legislation to regulate motor vehicle franchises. Numerous other states have enacted identical or substantially identical statutes. *See Gen. Motors Corp. v. O'Daniel Oldsmobile, Inc.* (*In re Application of Gen. Motors Corp.*), 439 N.W.2d 453, 456 (Neb. 1989) (stating at least twenty-three states have such a statute). The unequal bargaining power between franchisees and franchisers prompted numerous state legislatures to allow franchisees to object to a franchiser's attempt to establish

additional franchises within the franchisee's bargained-for area of responsibility. *See Rimrock Chrysler, Inc. v. State Dep't of Just., Motor Vehicle Div.*, 411 P.3d 1278, 1282 (Mont. 2018) (stating the purpose of the act is to protect a "franchisee-dealer from the unequal bargaining power of an automobile franchisor"); *see also New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 U.S. 96, 102 (1978) (stating a similar law in California "protects the equities of existing dealers by prohibiting automobile manufacturers from adding dealerships to the market areas of its existing franchisees where the effect of such intrabrand competition would be injurious to the existing franchisees and to the public interest"); *Dave Zinn Toyota, Inc. v. Dep't of Highway Safety & Motor Vehicles*, 432 So. 2d 1320, 1322 (Fla. Dist. Ct. App. 1983) (stating the purpose of the law "is to prevent powerful manufacturers from taking unfair advantage of their dealers" (quoting *Bill Kelley Chevrolet, Inc. v. Calvin*, 322 So. 2d 50, 52 (Fla. Dist. Ct. App. 1975))); *Gen. Motors Corp.*, 439 N.W.2d at 456; *Forest Home Dodge, Inc. v. Karns*, 138 N.W.2d 214, 218 (Wis. 1965) ("The whole framework of the law shows that the manufacturer, with his superior bargaining power, is not to be unsupervised in his dealings with the small independent dealer . . . ."). The purpose of these statutes is "to protect retail car dealers from perceived abusive and oppressive acts by the manufacturers." *New Motor Vehicle Bd.*, 439 U.S. at 101; *see also Gen. Motors Corp.*, 439 N.W.2d at 456. These statutes are not intended to promote "unstifled competition" or incorporate principles of antitrust into franchise law. The Arizona Court of Appeals specifically rejected an attempt to redefine "community" to incorporate principles of market competition and

antitrust law. *See Sanderson Lincoln Mercury, Inc. v. Ford Motor Co.*, 68 P.3d 428, 432 (Ariz. Ct. App. 2003) (rejecting argument that "community" should mean "relevant market area" and explaining "nothing in the statutory language supports Sanderson's position that principles of antitrust law should be superimposed on the statutory scheme to alter the express articulation of the legislature"). Chapter 322A is protectionist, but not in favor of consumers. Instead, it is protectionist in favor of franchisees as against franchisers. *See New Motor Vehicle Bd.*, 439 U.S. at 101–02; *Dave Zinn Toyota*, 432 So. 2d at 1322; *Rimrock Chrysler*, 411 P.3d at 1282; *Gen. Motors Corp.*, 439 N.W.2d at 456; *Forest Home Dodge*, 138 N.W.2d at 218.

By ignoring the legislature's own definition of "community," the majority actually undermines the purpose of the statute—to protect a franchisee against franchiser infringement in the "franchisee's area of responsibility as stipulated in the franchise." Iowa Code § 322A.1(2). In this case, the franchisee's area of responsibility is the parties' bargained-for seventy-one county "community" within the meaning of Iowa law. The court now allows Peterbilt to carve out a subset of twenty-three counties within that community to make it easier to develop a new franchise within the bargained-for community. Later, under the court's precedent, Peterbilt will be able to carve out a subset of counties from the twenty-three county community with its new franchisee to make it easier to develop yet another franchise within that bargained-for community, *ad infinitum.* The majority's approach undermines franchisee protection, contrary to the plain text of the statute and the purpose of the law.

Peterbilt and the Iowa Department of Transportation raise concerns regarding the practical effect of deciding in favor of Sioux City Truck Sales, since applying the legislature's chosen definition of "community" might prevent Peterbilt from making a dual assignment in Cerro Gordo County. I am unsympathetic to this argument. Peterbilt is a sophisticated party that entered into an arms-length deal and acceded to a seventy-one-county franchise agreement with Sioux City Truck. Peterbilt could have contracted for a smaller franchise area. Peterbilt could also have included certain triggers in its franchise agreement to require Sioux City Truck to develop new dealerships in underserved areas within the contracted-for area of responsibility. Peterbilt could offer other carrots or sticks to encourage development of new dealerships by Sioux City Truck. Even then, the statute gives Peterbilt other options, including altering Sioux City Truck's community, *see* Iowa Code § 322A.3A, or choosing not to renew its franchise with Sioux City Truck, *see* Iowa Code § 322A.2. Peterbilt should not now be permitted to avoid its contracted-for obligations and the clear policy decision made by the legislature. But the majority allows precisely this outcome.

The court of appeals correctly applied the plain text of the statute in accord with our precedents that require deference to legislative definitions of statutory terms. I would affirm that court's thorough and well-reasoned opinion.

For these reasons, I respectfully dissent.

Oxley and McDermott, JJ., join this dissent.